Egle v. Morrison.

# VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—PRINCIPAL AND AGENT—FRAUDS, STATUTE OF.

[Lucas (6th) Circuit Court, November 7, 1904.]

Parker, Hull and Haynes, JJ.

## CATHERINE B. EGLE V. R. MORRISON.

1. UNDISCLOSED PRINCIPAL MAY ENFORCE CONTRACT FOR SALE OF REAL ESTATE—AGENCY PROVEN BY PAROL.

A written contract for the sale of real estate made and signed by an agent in his own name, and without disclosing his agency or the name of his principal, is binding on and may be enforced by the principal. The agency and assent of the principal may be established by parol evidence. Such contract satisfies the requirements of the statute of frauds.

2. SIGNING BY ONE PARTY CHARGED AND ORAL ACCEPTANCE BY OTHER SUFFICIENT UNDER STATUTE OF FRAUDS.

It is no defense to an action to compel the specific performance of a contract required by the statute of frauds to be in writing, that it is not signed by both parties thereto; it is sufficient if it is signed by one of the parties to be charged, and is accepted by the other. Acceptance by the latter is shown by bringing suit upon it.

3. MARKETABLE TITLE ONLY, AND NOT ONE UNENCUMBERED, REQUIRED BY DEED CALLING FOR "GOOD WARRANTY DEED," ETC.

An obligation to convey real estate free from all incumbrances does not arise from an agreement calling for "a good and sufficient, full and covenant warranty deed, conveying to said purchaser a good title to said premises." The effect of such agreement is, that there shall be tendered a good marketable title, and a warranty for it.

4. BUILDING RESTRICTIONS AGAINST PROPERTY WAIVED WHEN PURCHASER MAKES CONTRACT WITH FULL NOTICE THEREOF.

A prospective purchaser of residence property subject to certain ordinary building restrictions which run with the land, and apply also to the adjoining property and that of the neighborhood, waives any objection he might otherwise have made on account thereof by entering into a contract for the purchase of the property with full knowledge and express notice of their existence; such knowledge and notice may be shown by parol evidence. And the presumption being that such restrictions are beneficial, instead of a detriment to the property, they cannot, in the absence of evidence to the contrary, be classed as incumbrances unless they affect the marketable quality of the title.

5. SUBSTANTIAL DEFECT NECESSARY TO DEFEAT REAL ESTATE CONTRACT OF SALE.

A substantial defect must appear to warrant a court in refusing to enforce contracts for the sale of real estate; a mere captious or technical objection, lacking substance, is not sufficient.

6. OBJECTIONS TO DEED WAIVED BY SILENCE OF GRANTEE, WHEN.

Where a real estate contract allows the vendor forty days within which to obviate any objection which vendee may make to the title, the failure of vendee, with full knowledge of the facts, to make any objection to a matter that might have been corrected, will constitute a waiver.

APPEAL.

Lucas County.

J. P. Manton and H. A. Merrill, for plaintiff.

Sheffler & Campbell, for defendant:

Subagent. 1 Am. & Eng. Enc. Law (2 ed.) 972; *Tynan* v. *Dullnig,* 25 S. W. Rep. 465 (Tex.); *Tynan* v. *Dullnig,* 25 S. W. Rep. 818 (Tex.); *Emerson* v. *Manufacturing Co.* 12 Mass. (11 Tyng) 237 [7 Am. Dec. 66]; *Bocock* v. *Pavey,* 8 Ohio St. 270; *Piatt* v. *McCullough,* 1 O. F. D. 301; Mechem, Agency Sec. 1877, p. 132, 167, 179, 769; *Great Southern Hotel Co.* v. *McClain,* 4 Dec. 309 (3 N. P. 112).

Specific performance. *Walsh* v. *Barton,* 24 Ohio St. 28; *Hutchenson* v. *McNutt,* 1 Ohio 14; *Kirby* v. *Harrison,* 2 Ohio St. 326 [59 Am. Dec. 677]; *Scott* v. *Fields,* 7 Ohio (pt. 2) 90; 3 Pomeroy, Eq. Jurisp. (2 ed.) 2172, n. 1; *Taylor* v. *Browder,* 1 Ohio St. 225; *Potter* v. *Potter,* 27 Ohio St. 84; *Vought* v. *Railway,* 58 Ohio St. 123 [50 N. E. Rep. 442]; 21 Am. & Eng. Enc. Law (2 ed.) 928; *Hughes* v. *Roth,* 7 Circ. Dec. 441 (18 R. 804); 7 Am. & Eng. Enc. Law (2 ed.) 125; *Center* v. *Center,* 38 N. H. 318.

Building restrictions are encumbrances upon real estate. *Stanley* v. *Bedinger,* 1 Circ. Dec. 522 (2 R. 344); *Lloyd* v. *Quimby,* 5 Ohio St. 262; *Isham* v. *Matchett,* 10 Circ. Dec. 267 (18 R. 338); *Russell* v. *Harpel,* 10 Circ. Dec. 732 (20 R. 127); 8 Am. & Eng. Enc. Law (2 ed.) 123; *Roberts* v. *Levy,* 3 Abb. Pr. (N. S.) 311; *Halle* v. *Newbold,* 69 Md. 265 [14 Atl. Rep. 662]; *Kramer* v. *Carter,* 136 Mass. 504; *Locke* v. *Hale,* 165 Mass. 20 [42 N. E. Rep. 331]; *Hatcher* v. *Andrews,* 68 Ky. (5 Bush.) 561.

**HULL, J.**

This action was brought in the common pleas for specific performance, and an appeal was taken from the judgment of that court to this court. The action was brought by the vendor of a certain lot in this city against the defendant as vendee to require the vendee to pay to the plaintiff a balance of purchase money. It is claimed by the plaintiff that she made a valid and binding contract with the defendant to sell to him this lot, for an agreed price of $6,900; that $100 was paid down as earnest money and a contract was made it is claimed on February 2, 1904, that the balance of $6,800 was to be paid on March 1, following, and that a deed was to be delivered to the defendant. The plaintiff claims that she was ready with her deed to deliver it on March 1, with an opinion of title, as required by the contract, and that the defendant did not come to the place specified and did not pay the money, or any part of it, and that afterwards on March 7, following, she tendered to him a deed of the property and an opinion of title and demanded the money and he re-

Egle v. Morrison.

fused to pay it and did not pay any of it, and soon thereafter this suit was commenced for specific performance.

It is claimed by defendant that no contract was ever made binding him to purchase this property. It is claimed that the title which she offered to the defendant was defective—that the property was encumbered in such a manner that he was not bound to take it and that, therefore, he cannot be required to specifically perform this contract; and it is further claimed by him, that the contract, if it was binding upon the parties, provided for stipulated damages to the amount of $100, the amount of the earnest money which he had paid, and that therefore, he cannot be required to pay the $6,800.

It is conceded by all that, by mistake, the lot was described in the writing in question as "lot 44," when it should have been "lot 43" but that error may be considered as corrected. It appears from the testimony that the plaintiff was the owner of said lot 44, Mariette addition to the city of Toledo, in February, 1904, and that the defendant, Morrison, desiring to purchase a residence in the city of Toledo, looked at this property. The plaintiff, prior to that time had put the property into the hands of her husband, as her agent to sell it, and he had given the property for sale to Pepple & Co., real estate agents in this city, and they informed Morrison that they had it for sale, and he came to Toledo from Gibsonburg, Ohio, where he lived, went to the property and examined it and Mr. Egle, the husband of the plaintiff, in her presence and hearing and with her approval directed Pepple & Co., to close a contract with him for the property at $6,900, and to sign his, Egle's, name to the contract—the title to the property being in the plaintiff, Mrs. Egle, and on February 2, 1904, Mr. Pepple, of Pepple & Co., closed the sale with Morrison, for $6,900, and then the written contract or paper in question, was drawn and signed.

This paper provides that, "this memorandum witnesseth, that Thomas J. Egle through Pepple & Co., his agents, hereby agrees to sell and convey by warranty deed, and R. Morrison agrees to purchase at the price of $6,900, the following described real estate in the city of Toledo," and then follows the description. The writing then recites that Morrison has paid $100 on the contract as earnest money "and agrees to pay on March 1, 1904, the further sum of $6,800 at the office of Pepple & Co., provided a good and sufficient, full and covenant warranty deed, conveying to said purchaser a good title to said premises (subject as aforesaid) shall be ready for delivery. A statement and opinion of title to be furnished at the time of the execution of said deed." Then fol-

Lucas County.

low provisions as to the shades, screens, chandaliers, etc., and then comes this: -

"In case the title upon examination is found defective, and the defect is not cured within forty days from the date of this contract, the said earnest money shall be refunded to said purchaser, and this agreement shall then become inoperative. Should said purchaser fail to perform this contract on his part at the time and manner specified, the earnest money paid as above, shall at the option of the vendor and his agents, be forfeited as liquidated damages, and this contract shall become null and void. In testimony whereof," etc., and signed, "Thomas J. Egle, per Pepple & Co." and "R. Morrison."

On March 1, Morrison did not appear at the office of Pepple & Co. to pay the money or to receive the deed and opinion of title which were ready to be delivered to him. The contract does not provide that they should be on deposit at the office of Pepple & Co., but on the fourth day following defendant wrote to Peppel & Co. that he feared that he would not be able to carry out this agreement, as he was having trouble in disposing of his property at Gibsonburg, and, unless he disposed of his property there, he would not want this property and that he was sorry to make any trouble for Mr. Egle. He made no complaint of the title, and on March 7, the plaintiff, or her agent, took to Mr. Morrison the deed and opinion of title, tendered them to him and he refused to accept them or to pay the money. He said he would show the opinion of title to his attorney; and the same day or soon after he returned the opinion of title to Pepple & Co. without any complaint as to the title, appearing to be satisfied with it.

The opinion of title showed that there was a building restriction upon this property, as upon all the property along the street, running with the land, providing that all houses should be built thirty feet from the street; that they should be of the value of $2,500; that no illegal or immoral business should be carried on in the buildings, or on the property, and the sale of intoxicating liquor was expressly prohibited. The provisions were what are commonly known as building restrictions, and it is claimed here that on account of those restrictions, which bound Mrs. Egle and the property and which became a part of this deed by virtue of their running with the land, she did not tender and could not tender to Mr. Morrison a good title.

It is claimed, first, that Morrison cannot be compelled to carry out this contract because Mrs. Egle was never bound by it. It is said that she gave this property to her husband as her agent, for sale; that he had no title in the property; that he made the contract in his own name

Egle v. Morrison.

for this sale and she did not sign it and that she was not disclosed as his principal when his name was signed by Peppel. This contention, we think, is not tenable. We think that the law is, that where an agent has property for sale—as if Mr. Egle had it for sale and if he made the contract—he may make the contract in his own name without disclosing his principal, and it will bind his principal. This has been decided by the Supreme Court of this state in the case of *Thayer* v. *Luce*, 22 Ohio St. 62. This is from the syllabus:

"On the trial of an issue under the statute of frauds, the assent of the plaintiff to the terms of the contract may be shown by parol testimony.

"If the contract was made by the agent of the plaintiff in such a case, the agency may be established by parol testimony, notwithstanding the agent may have contracted in his own name, without disclosing his agency or the name of his principal in the transaction."

This is on page 78 of the opinion:

"The provisions of the statute are complied with, if the names of competent contracting parties appear in the writing, and if a party be an agent, it is not necessary that the name of his principal should be disclosed in the writing. Indeed, if a contract, within the purview of the statute, be made by an agent, whether the agency be disclosed or not, the principal may sue or be sued as in other cases."

And on page 79, this is said:

"The remedial laws of the state are under legislative control, and as we understand it, the reciprocal right of parties to enforce certain contracts by action is taken away by force of this statute. If the written agreement in such case be signed by one of the contracting parties and not by the other, the latter may enforce it by action, although the former may be remediless if the agreement be broken against him."

It is claimed in this case that the contract could not be enforced by the plaintiff because he had never signed the contract; but it seems to be held by the Supreme Court that where the transaction is within the statute of frauds, as in this case, if one of the parties signed the contract, the other may accept the contract and enforce it by action although he has not signed the contract at all. But, in the case at bar the contract was signed, or directed to be signed, by the plaintiff's agent. We think the fact that Pepple signed Mr. Egle's name to it, does not affect the question one way or the other. Egle directed him to sign his name to the contract, and it was as binding upon him as though he had signed it with his own hand and although he did not own the property and was acting for an undisclosed principal, when Morrison signed the contract,

Lucas County.

it was binding upon him, and when it was accepted by Mrs. Egle, as it was afterwards, it, if course, became binding upon her, whether it was at the time her husband had his name signed to it or not; she did accept it afterwards by signing and executing a deed, which was tendered to Morrison on March 7. In *Walsh* v. *Barton*, 24 Ohio St. 28, the court say in the opinion on pages 39, 40:

"The only question, therefore, is whether it be necessary, in order to satisfy the statute of frauds, that the names of the principals should appear in the memorandum, in a case where the contract was, in fact, made by their agents, and the names of the agents are set out in the writing. We think the statute is satisfied in this respect, when the names of the agents are set out in the writing, though the names of the principals be not disclosed. The case being thus taken out of the statute, the right or liability of the principals may be enforced, and their identity established, according to the rules of law governing in other cases, where contracts are made by agents without disclosing their principals."

*Renwick* v. *Bancroft*, 56 Iowa 527 [9 N. W. Rep. 367] is to the same effect. The statute of frauds of course requires that there should be a memorandum in writing, signed by the party to be charged. It only requires the signing of the contract by one party; the other party may accept the contract, and by bringing suit upon it, he does so. That seems to be the holding in this state, although in some states it is held that one cannot have specific performance unless both parties are bound originally by the contract. But it is held in *Old Colony Ry.* v. *Evans,* 72 Mass. (6 Gray) 25 [66 Am. Dec. 394], that a contract may be enforced although signed by only one party, and also in *Dresel* v. *Jordan,* 104 Mass. 407, 412.

Now as to the building restrictions; it was agreed in this contract that there should be delivered a "good and sufficient, full and covenant warranty deed, conveying to said purchaser a good title to said premises." In other words, it was agreed that he should have a warranty deed. It has been held in this state that such an agreement is not an agreement that there will be no encumbrances upon the property, but that there shall be a good title and a warranty for it. *Peoples' Sav. Bank Co.* v. *Parisette,* 68 Ohio St. 450 [67 N. E. Rep. 896; 96 Am. Rep. 672], first paragraph of the syllabus:

"Where a vendor of land has obligated himself by written contract to convey 'by good warranty deed and abstract of title from organization of county,' but the contract contains no stipulation for a deed containing a covenant against incumbrances generally, and none against any

Egle v. Morrison.

inchoate dower right, it is not essential to the performance of the contract by the vendor that his wife should join in the deed and release her right of dower."

In *Rife* v. *Lybarger*, 49 Ohio St. 422 [31 N. E. Rep. 768; 17 L. R. A. 403], it is said in the syllabus:

"Where, in a contract for the sale of real estate, there is no stipulation * * * the vendor is only bound to tender a marketable title."

In this case, there was an old mortgage upon the property which had become void by the statute of limitations, and it was held by the Supreme Court that that was not material and it was held that in any event, under a contract of this kind the vendor is only required to tender a marketable title, and some mere speck or trifling cloud upon the title is not sufficient to defeat the vendor in his right to have the contract enforced.

But we think the evidence shows that, so far as this building restriction was concerned, Mr. Morrison had knowledge of it. Two witnesses testify that when he was at the house he asked about a vacant lot next door and he was told of these building restrictions upon the property upon the street and which would protect him in his property. More than that, it does not appear that that this building restriction was any damage to the property, but rather a benefit, if it were to be used for residence purposes; and Morrison was intending to use it for residence purposes and there was a valuable residence upon it at the time, and, in the absence of evidence to the contrary, it would be presumed that a restriction of this kind would be a benefit to him. Upon this proposition we cite *Riggs* v. *Pursell*, 66 N. Y. 193, 202, 203, where that question is discussed. But, in any event, the fact that he had notice of it deprives him of the right to set it up as a defense. He had notice of it before the contract was signed, and therefore, waived any right to complain of this restriction. He took the property and signed the contract with full knowledge that this restriction was upon it.

We cite *McWhorter* v. *McMahan*, 10 Paige 386, where this is said in the syllabus:

"Where a deed is delivered, in performance of a contract for the sale of land, if the purchaser has any objection to the deed itself, or to the description of the premises therein, or if he objects to accepting the deed upon the ground that the premises are incumbered, it is his duty to make the objection known at the time, so as to give the vendor an opportunity to obviate it.'

An English case more in point than this case, is found in *Oglivie* v. *Foljambe*, 3 Meriv. 53, a chancery case. It is said in the syllabus:

Lucas County.

"The right to a good title does not grow out of the agreement between the parties, but is given by law; but a purchaser may waive his right by going on with the agreement after he has full notice that he is not to expect a good title. This is, in such case, matter of notice, and not of contract."

We think this notice can be established by parol evidence. The property was offered to Morrison for this price. He came to see it and was given express notice of the building restriction and agreed to purchase it and pay this price for it with full knowledge, and there being no evidence that this was any damage to the property, we think it cannot be called an incumbrance.

As to the claim that the parties agreed upon the sum of $100 as liquidated damages, it appears from the contract that this was at the option of the vendor. The plaintiff might keep the $100 which had been paid to her as liquidated damages, if she chose, or she might exercise her option to bring an action for specific performance, and she has chosen to do that. It seems to us that this was a fair contract made between these parties in good faith. Mr. Egle was representing his wife and had full authority to make this contract for her and with her knowledge and he had Pepple sign his name to the memorandum or contract. She accepted the contract and tendered to Morrison a deed and, so far as we can see, did all that was required of her to perform. The real trouble, as it seems to us and the failure of Morrison to complete the purchase grows out of the fact that he could not dispose of his Gibsonburg property and therefore did not desire to have this house.

Parties cannot defeat contracts of this kind by a mere captious objection. The court cannot help out a party who is simply striving by some technical objection to defeat the right of a vendor to require him to carry out his contract; there must be some substantial objection, and if under a contract of this kind a good title is tendered—a marketable title—it is sufficient. This property was incumbered only by this building restriction, of which Morrison had full knowledge. It is objected that he did not get nor have tendered to him a warranty deed from Mr. Egle, as he claimed he was entitled to, as he had not understood that Mr. Egle was not acting for himself. But, in any event, this contract contains a provision that, if there is any objection to the title, the vendor shall have forty days wherein to obviate it. No objection was made to the title by Mr. Morrison at any time, neither when the deed was tendered to him and the money demanded, nor after he had examined the opinion of title, nor when he wrote his letter of March 4, to Pepple & Co. saying that he feared he would not be able to carry out the contract. Had he said

Egle v. Morrison.

that he desired a warranty deed from Mr. Egle, it undoubtedly would have been executed and tendered to him. He having made no objection of that kind, he must be held to have waived it. It may be unfortunate for Mr. Morrison to be compelled, under the circumstances in which he now is, to carry out this contract; but it seems to us that it was a binding contract, and that the plaintiff is entitled to the relief which she asks, and the order of the court will be that the prayer of the petition be granted and that Mr. Morrison be required to pay the balance of the purchase money, $6,800, to the plaintiff and some $44.29 dollars of assessments and taxes which are provided for in the contract, and that he pay the costs of this action.

**Parker** and **Haynes, JJ.,** concur.