FRANK, APPELLANT, *v.* MURPHY ET AL., APPELLEES.

(Decided May 22, 1940.)

*Messrs. Frank & Ream,* for appellant.
*Messrs. Musser, Kimber & Huffman,* for appellee David C. Murphy.
*Messrs. Snyder, Seagrave, Roudebush & Adrion,* for appellees The Aldon Investment Company and Albert J. Kent.

STEVENS, J. In the Court of Common Pleas, plaintiff filed a petition seeking a declaratory judgment of that court on the question as to whether plaintiff was required to accept a deed to certain premises located in Shaker Heights, Cuyahoga county, Ohio.

To that petition the defendant Murphy filed an answer and cross-petition.

His answer, after certain admissions, denied generally the allegations of plaintiff's petition.

In his cross-petition, he prayed, first, that the court order plaintiff to specifically perform the contract between plaintiff and himself, and, second, in the alternative for damages in the amount of his commission.

The defendants The Aldon Investment Company and Albert J. Kent, jointly, also filed an answer to the petition of the plaintiff, and also included therein their answer to the cross-petition of the defendant David C.

Murphy, the contents of which answer, for the purposes of this opinion, need not be set forth.

By agreement, the second claim (for damages) of the defendant Murphy's cross-petition was omitted from the lower court's consideration, and the case was submitted on the issue of specific performance; and the case is likewise so submitted to this court.

The trial court declared that plaintiff should specifically perform the contract, and plaintiff has appealed to this court on questions of law and fact from that judgment, the plaintiff below thus being the appellant in this court, and the defendants below being the appellees in this court.

The transcript discloses that The Aldon Investment Company, a corporation, was and is the owner of the property which is here involved, and that Albert J. Kent was and is the controlling owner of that corporation. Mr. Kent had certain discussions with a Cleveland real estate broker named Spitz concerning the availability of this property for sale, and was advised by Kent that the property was for sale at a price of $100,000 cash. Spitz, however, did not procure a listing contract thereon.

Spitz conferred with David C. Murphy, a real estate broker of Akron, Ohio, who in turn contacted the plaintiff, Paul A. Frank, concerning the purchase of this real estate. Conferences between Murphy and Frank culminated in Frank's making by letter a written offer to Murphy to purchase the property. This offer was as follows:

"September 8, 1939.

"Mr. David C. Murphy,
"2521 Front St.,
"Cuyahoga Falls, Ohio.

"Dear Mr. Murphy:

"With respect to the purchase of 16730 Kinsman road, Shaker Heights, Ohio, including the lease to F. W. Woolworth & Company, which I examined some

time ago, I offer you $100,000 for a clear title to this property on the following basis:

"You are to accept the following mortgages at 75% of their face value at the time of the consummation of the deal, which mortgage values are approximately as follows:

| | |
|---|---|
| "1059 N. Howard St. | $4,642.00 |
| "847 Wall St. | 2,021.00 |
| "807 Elmore Ave. | 1,873.00 |
| "64 Mt. View Ave. | 4,639.00 |
| "171 Beck Ave. | 4,395.00 |

"You are also to take over, for a credit of $10,000 on the purchase price, the following properties:

"366 Bell St.
"1417-19 Marcy St.
"1760 Manchester Rd.
"1629 S. Second St., Cuyahoga Falls
"94 W. Tallmadge Ave.
"433 Sherman St.
"481 E. Crosier St.

"It is understood that, should this deal be consummated, you will receive a commission of 3% on the value of the credit which I receive from the mortgages and the real estate, but it is understood and agreed that Mr. Kent will pay the commission which may be due on the sale of the property on Kinsman road.

"The real estate is subject to prior sale, as a whole.

"Very truly yours,
"(Signed) Paul A. Frank."

That offer was accepted by Murphy through his letter of September 11, 1939, as follows:

"September 11, 1939.

"Mr. Paul A. Frank,
"Second National Building,
"Akron, Ohio.

"Dear Mr. Frank:

"Relative to your letter proposal of September 8, 1939, covering the purchase of property located at 16730 Kinsman road, Shaker Heights, Ohio, please be advised that I accept the proposition as outlined.

"I have a firm commitment from Mr. Kent, the owner, and Mr. Spitz, the co-broker, accepting your proposal.

"Sincerely yours,
"(Signed) David C. Murphy."

Thereafter that contract was by agreement modified so as to reduce the purchase price from $100,000 to $95,000.

An abstract of title to the premises was demanded by Frank, and furnished, and it is claimed by him that then, for the first time, he was apprised of the existence of certain restrictions limiting the use to which the property could be adapted, and also of the existence of a record easement for driveway purposes across the rear of the premises. There was also an actual driveway across the premises at a place other than that specified of record, concerning which the evidence does not show whether it existed by grant, prescription or license.

The question is thus presented as to whether the existence of the restrictions upon these premises, and of the easements thereon, permit the giving of a deed conveying such "clear title" thereto that plaintiff can be compelled to accept the same, when the deed must be made subject to the restrictions on the use of the property, and to the easements for driveway purposes.

The contract into which Frank and Murphy entered provided that Frank was to receive a "clear title" to

the premises in question, in consideration of the payment by him of the $95,000 purchase price.

The contract further provided for the defendant Murphy's taking over certain mortgages and real property to apply upon the purchase price.

The owner of the property refused to accept the mortgages and real estate upon the purchase price, and thereby disaffirmed the contract into which Murphy had entered. Murphy thereupon sold the mortgages and real estate for Frank, charging therefor a commission as provided in the contract. This latter provision we hold to be a severable part of a divisible contract; and its performance did not constitute part performance of the contract of sale.

If the contract had been silent on the subject of the kind of title to be given, the law would have presumed that a marketable title was intended. Paragraph one of the syllabus in *McCarty* v. *Lingham,* 111 Ohio St., 551, 146 N. E., 64.

A "marketable title" has been described as follows:

"It must in any event embrace the *entire* estate or interest sold, and that free from the lien of all burdens, charges, or incumbrances which present doubtful questions of law or fact." (Italics ours.) *McCarty* v. *Lingham, supra,* at 558.

However, we entertain serious doubt that the title proposed to be given plaintiff even constitutes a marketable title, within the above definition.

"Clear title" and "marketable title" are not synonymous terms. "Clear title" imports something more than a mere marketable title. "Clear" is defined in Webster's New International Dictionary (2d Ed.), as "9. Free from encumbrance, obstruction, burden, limitation, etc."

"Clear title," then, means a title which is free from encumbrances, obstructions, burdens and limitations, not only of the type which present *doubtful* questions of law or fact, but which is free from encumbrances,

obstructions, burdens and limitations which present any *reasonable* question of law or fact.

Here the owner of the premises, who in our judgment was not bound by any contract in connection with this transaction, professes a willingness to sell the property for the price stipulated, but insists that the deed shall be for the premises as they are, subject to the limitations in use imposed by the restrictions, and subject to the easements thereon.

The broker Murphy urges that such a title as the owner is willing to convey constitutes a "clear title" and complies with the terms of the contract; moreover, Murphy alleges that Frank had knowledge of the existence of the restrictions and of the easements, before making his offer, and is accordingly estopped to object to the acceptance of a deed containing those exceptions from the covenant against encumbrances.

We may here observe that we find nothing in this evidence which in our judgment justifies the application of the doctrine of estoppel so far as the plaintiff is concerned. Frank contracted for a "clear title," and a title subject to certain encumbrances is offered by Murphy.

The annotation in 64 A. L. R., 1479, at 1480, states the following with reference to easements:

"Generally, however, it may be stated that an easement conferring upon its owner an interest in the land, the right to some profits, benefit, dominion, or lawful use out of or over the land, though it may be consistent with the passing of the fee by the conveyance, is a burden upon the estate granted, diminishing the full measure of its enjoyment, and constitutes a breach of the covenant against encumbrances in the deed *irrespective of the grantee's knowledge of such easement.*" (Italics ours.)

We are of the opinion that a deed to real estate, conveying property subject to easements for driveway purposes, and also subject to a complicated set of re-

strictions, both of which are here present, does not grant a "clear title" as we have defined our understanding of that term, and that Frank cannot properly be compelled to accept such title under his contract.

A decree may be prepared wherein a declaration by this court is contained finding that there is no obligation upon Paul A. Frank to accept a deed and pay for the premises in question under the circumstances here disclosed.

*Decree for appellant.*

WASHBURN, P. J., and DOYLE, J., concur.