DECISION AND JOURNAL ENTRY
Plaintiff-Appellant, Agnes M. Zilka (Zilka), has appealed from a judgment of the Lorain County Common Pleas Court that granted summary judgment to Defendant-Appellees, Mark Smitek, Gary Smitek, and Central South Limited Partnership (Central South). This Court affirms.
 I.
Zilka is the owner of a home located at 3443 Stoney Ridge Road, Avon, Ohio. Next to this house is 22 acres of undeveloped land which Zilka also owned. During 1992, James K. Roosa (Rossa), contacted Zilka because he was interested in purchasing the property and developing it. On December 23, 1992, Zilka granted Roosa an Option to Purchase (Roosa Agreement) the property for six months. Paragraph 5a of that agreement contained the following provision:
 Seller shall receive free and clear and at no cost a buildable lot in the future subdivision located behind and adjacent to or as close as possible to her residence located at 3443 Stoney Ridge Road, with all utilities including electric, gas, water, sanitary and storm sewers and sidewalks.
 Because Roosa was unable to arrange for the development of the property within the appropriate time period, he transferred the option to Mark and Garry Smitek, who were partners of Central South. On May 20, 1993, Central South presented to Zilka a written offer to purchase the same property (Central South Agreement). The Central South Agreement contained an addendum, which incorporated the above-mentioned provision from the Rossa Agreement. The Central South Agreement contained the following provision:
 All other consistent terms and conditions of the Option to Purchase executed December 23, 1992 (attached hereto) shall remain in full force and effect. The conditions contained in Paragraph Five [5] and Seven [7] of the Option shall be incorporated into a recordable document or deed restriction, shall survive escrow, and run with the land.
 On July 2, 1993, Zilka executed a deed to Central South that contained the following provision:
 Grantor has the right to receive free and clear and at no cost, a buildable lot in the future subdivision located behind and adjacent to or as close as possible to her residence located at 3443 Stoney Ridge Road, with all utilities including electric, gas, water, sanitary, and storm sewers and sidewalks.
 On December 20, 1995, Central South recorded restrictions for the subdivision known as Highland Park. Shortly thereafter, Central South executed a quit-claim deed to Zilka on December 26, 1995. Neither party has disputed the fact that Central South hand delivered Zilka the quit-claim deed on January 10, 1996.
During January of 1997, Zilka's son inquired about a building permit. At this point, Zilka discovered that she could not build on the lot in accordance with the city building code, unless she also complied with the restrictive covenants. Zilka spoke to Central South about these restrictions and demanded a corrective deed.
After Central South would not comply with Zilka's request, she filed a complaint against them and Lorain County Title, alleging breach of contract, breach of warranty deed covenant, and fraud. Lorain County Title filed an answer and counterclaim based on frivolous conduct, while Central South answered the complaint. Zilka filed a motion to dismiss Lorain County Title's counterclaim and a motion for partial summary judgment on her claims for breach of contract and breach of warranty deed. Central South and Lorain County Title each separately filed a motion for summary judgment. The trial court denied Zilka's partial motion for summary judgment, granted her motion to dismiss the counterclaim, and granted summary judgment in favor of Lorain County and Central South. Zilka timely appealed, asserting two assignments of error.[1] For ease of discussion, Zilka's assignments of error have been rearranged.
 II. Assignment of Error Number Two
 The trial court erred in granting summary judgment in favor of [Central South] because sufficient evidence required by [Civ.R. 56] exists to raise a genuine issue of material fact as to whether Zilka was fraudulently induced to execute the purchase and sale documents.
Assignment of Error Number One
 The trial court erred in denying Zilka's motion for partial summary judgment on count one (Breach of Contract) and count three (Breach of Deed Covenant) since the doctrine of merger upon which the trial court relied has no application where there is a specific survivor clause in the purchase agreement and warranty deed covenant preserving Zilka's rights to receive free and clear and at no cost a buildable lot in the future subdivision.
 In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court outlined the respective burdens upon the moving and nonmoving parties in the context of a motion for summary judgment pursuant to Civ.R. 56:
 [W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic.) These principles were reaffirmed in Vahilav. Hall (1997), 77 Ohio St.3d 421, 429-430.
Thus, unless the movant fulfills both prongs of the Dresher
duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy that obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am.Express Travel Related Serv. Co., Inc. v. Mandilakis (1996),111 Ohio App.3d 160, 164.
However, once the movant satisfies his burden, the nonmovant must then present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute. Pursuant to Civ.R. 56(E), a nonmovant "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the nonmovant fails to satisfy his reciprocal burden, summary judgment, if appropriate, should be granted. Civ.R. 56(E). This Court will analyze both parties' arguments and the evidence presented in support of those arguments to establish whether the respective burdens have been met.
A. Definition of "Free And Clear"
In order to address Zilka's claims, this Court must first determine the meaning of the phrase "free and clear at no cost."[2] The interpretation of a contract is a matter of law and shall be reviewed by a court de novo. Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. It is presumed that the intent of the parties to a contract rests in the language that they have chosen to employ in the agreement.Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. A court should attempt to harmonize provisions and words in a contract so that every word is given effect. Christe v. GMS Mgt.Co. (1997), 124 Ohio App.3d 84, 88, citing 18 Ohio Jurisprudence 3d (1980), Contracts, Section 157. If the terms in the contract are clear and unambiguous, a court should not in effect create a new contract by finding an intent not expressed in the clear language of the contract. Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, 638.
This Court notes that the record does not indicate whether Zilka or Roosa drafted the Roosa Agreement.[3] Central South, who did not sign the Roosa Agreement, has asserted that the words "free and clear at no cost" refer to developmental costs because Zilka's son wrote the words "Developmental costs free and clear" below the paragraph 5a of the Roosa Agreement. Second, Zilka has argued that the words indicated that she would receive a free and clear title; with the words "free and clear" having a distinct meaning apart from costs. Zilka's rationale for this interpretation is that any other interpretation would make the words "at no cost" completely superfluous. She also mentioned that the term "developmental costs" is not mentioned elsewhere in any other contract or deed; however, the words "free and clear at no cost" appear in the later agreements and deed. Lastly, Roosa stated in his deposition that he did not recognize the handwritten words and did not remember if the handwriting appeared on the document before he signed it. Roosa further interpreted the words "free and clear at no cost" to mean that Zilka wanted a lot that, if developed by Roosa, would have a marketable title with no liens or easements on it.
Based on the foregoing, this Court holds that the words "free and clear at no cost" are not ambiguous. The parties who signed the Roosa Agreement, both Zilka and Roosa, stated that the words "free and clear" related to the title and had a separate meaning from "at no cost." Therefore, this Court will not attempt to create a new contract by finding an intent not expressed in the clear language of the words "free and clear at no cost."
Having determined that the parties intended the phrase "free and clear" to relate to matters concerning the title and not cost, this Court will now interpret its legal application. Zilka has argued that the words should be separated, in which "clear title" means something more than a mere marketable title. Zilka has relied on Frank v. Murphy (1940), 64 Ohio App. 501, in which this Court stated that a "clear title":
 means a title which is free from encumbrances, obstructions, burdens and limitations, not only of the type which present doubtful questions of law or fact, but which is free from encumbrances, obstructions, burdens and limitations which present any reasonable
questions of law or fact.
Id. at 505-506. Based on Frank, Zilka has argued that she should receive a lot that is not subject to any restrictions. To the contrary, Central South has argued that this case is distinguishable from Frank because this case involves a "free and clear" title, not a "clear title." This Court agrees that the words "free and clear" are different from a "clear title."
"Free and clear" is defined in Black's Law Dictionary, 7th Ed., as "Unencumbered by any liens; marketable free and clear title." Although a "clear title" is one that is not subject to any restrictions, the case at bar involved a "free and clear" title, which is the same as a marketable title. "A title need not be free of any possible claim of defect in order to be marketable, but it must be in a condition to satisfy a buyer of ordinary prudence." G/GM Real Estate Corp. v. Susse Chalet Motor Lodge ofOhio, Inc. (1991), 61 Ohio St.3d 375, paragraph two of the syllabus. Generally, an ordinary building restriction applicable to all the property in the neighborhood, of which purchaser had knowledge, cannot be classified as an encumbrance to affect the marketability of the title because the presumption exists that such restriction is a benefit rather than a detriment. See Eglev. Morrison (1904), 6 Ohio C.C. (N.S.) 609, 615. Thus, an ordinary building restriction, provided the buyer has knowledge, cannot destroy its marketability. In short, while "clear title" cannot have any encumbrance or restriction whatsoever, "free and clear" title is a marketable title and, therefore, may be subject to an ordinary building restriction, which applies to all the property in the neighborhood.
 B. Fraud Claim
The Ohio Supreme Court defined fraud as:
 (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. (Citations omitted.)
Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475. In order to establish a claim of fraud, it is necessary for the party to prove all of the above elements.
In support of its motion for summary judgment, Central South argued that it never misrepresented or concealed the fact that Zilka would receive a free and clear title. Central South also pointed to its affidavits as proof that Zilka received a marketable title and argued that Zilka had every opportunity to clarify in writing the meaning of "free and clear" prior to her signing the agreement. Both Mark and Gary Smitek of Central South stated in their depositions that they had discussed the restrictions with Zilka. Central South further pointed to the fact that Zilka could have checked the record at the title office prior to accepting the deed. Lastly, Central South has argued that Zilka has suffered no injury because she received a title that was "free and clear;" i.e., marketable.
To rebut Central South's argument, Zilka pointed to both Smitek's depositions in which they admitted that they intended to place restrictions on her lot. Again, Zilka argued that the words "free and clear" should be interpreted as a lot with no restrictions. She pointed to her affidavit in which she averred that Central South never discussed any restrictions with her. Zilka also argued that she would never have entered into this agreement if she had knowledge of the restrictions.
While construing these documents most strongly in Zilka's favor, this Court finds that there is no evidence that would justify a finding that Central South misrepresented a material fact concerning the words "free and clear." As this Court has already stated, the words "free and clear" are similar to a marketable title. Although subject to building restrictions, it is undisputed that Central South conveyed a lot that was marketable. The record is devoid of any specific facts showing that Central South knowingly made false representations with the intent to mislead Zilka or concealed any facts concerning the restrictions. In fact, the restrictions were filed at the recorder's office, and Zilka could have discovered them had she searched the record. Therefore, the trial court was correct in granting summary judgment in Central South's favor on Zilka's claim of fraud. Zilka's second assignment of error is overruled.
 C. Breach of Contract Claim
Under the doctrine of merger, when a deed is delivered and accepted without qualification pursuant to a real estate purchase contract, the contract becomes merged into the deed, and no cause of action upon the prior agreement exists. Fuller v. Drenberg
(1965), 3 Ohio St.2d 109, 111. There are, however, two exceptions to the doctrine of merger. The doctrine will not apply if elements of fraud or mistake exist, or if the prior agreement is collateral to and independent of the main purpose of the transaction.[4] Mayer v. Sumergr (1960), 111 Ohio App. 237,240. The court in Mayer held that a covenant is not collateral and merges into the deed if the contractual provision "does not import a warranty upon which the sale of the property is contingent nor a stipulation which can only be satisfied and executed in the conveyance itself." Id. at 239. Furthermore, if the contractual provision runs with the land or concerns the title, occupancy, size, enjoyment, possession, or quantity of the parcel of land conveyed, it is not collateral and, therefore, is merged in the deed.
In the case at bar, the provision in paragraph 5a of the Roosa Agreement related to the future conveyance to Zilka. According to the provision, Zilka was to receive "free and clear and at no cost a buildable lot" at the specified location. The Central South Agreement assumed paragraph 5a of the Roosa Agreement and stated that such condition shall be incorporated into a recordable deed restriction. This provision relates to the conveyance of the land and once the conveyance was performed, it merged into the deed.
Even assuming the provision in paragraph 5a of the Roosa Agreement did not merge into the deed, Zilk'a breach of contract claim is without merit. Zilka placed the condition in the deed that she conveyed to Central South on July 2, 1993. This conveyance satisfies part of the condition mentioned in paragraph 5a of the Roosa Agreement. On December 26, 1993, Central South executed a quit-claim deed to Zilka for the property described in paragraph 5a of the Roosa Agreement. Although the property was subject to residential restrictions, it was unencumbered and marketable. Because this Court has determined that the words "free and clear" are the same as marketable, the condition in paragraph 5a of the Roosa Agreement has been satisfied, and Zilka's breach of contract claim is not well taken.
 D. Breach of Covenant Claim
A grantee who has accepted a deed that is subject to "restrictions of record" is deemed to have knowledge of those restrictions that appear in the purchaser's chain of title; and, therefore, takes the property subject to those restrictions. 37Robinwood Associates v. Health Industries, Inc. (1988), 47 Ohio App.3d 156,157. In the case sub judice, the record reveals that the restrictions in the subdivision were recorded prior to Central South's conveyance to Zilka. In addition, neither party has disputed the fact that Central South hand delivered Zilka the quit-claim deed for the conveyance that occurred on December 26, 1995. Zilka accepted this deed and did not challenge the restrictions until almost fourteen months later during March of 1997. In light of the foregoing, this Court finds that Zilka is deemed to have knowledge of the restrictions and, therefore, accepted the property subject to the restrictions. Zilka's claim for breach of covenant is therefore without merit, and her first assignment of error is overruled.
 III.
Zilka's assignments of error are overruled. The judgment of the trial court granting summary judgment in favor of Central South is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT CARR, J., CONCURS, BAIRD, P.J., CONCURS IN JUDGMENT ONLY
[1] Zilka has not appealed the decision by the trial court regarding Lorain County Title.
[2] The record does not indicate that the trial court addressed this particular issue; however, this Court believes that it is necessary to discuss the meaning of this phrase in order to address Zilka's claims.
[3] Zilka has admitted in her deposition that at some point prior to signing the Roosa Agreement, she did take a draft to an attorney and discussed it.
[4] This Court notes that because Zilka's claim of fraud is without merit, this exception is not applicable.