KOHLBRAND et al.

v.

RANIERI et al., Appellees; Monfort Supply Company, Inc., Appellant.

[Cite as *Kohlbrand v. Ranieri*, 159 Ohio App.3d 140, 2005-Ohio-295.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030792.

Decided Jan. 28, 2005.

Geoffrey P. Damon, for appellant.

Taft, Stettinius & Hollister, L.L.P., Earl K. Messer and Edward Pete Akin, Cincinnati, for appellees.

MARK P. PAINTER, Judge.

{¶ 1} In both life and law, sometimes the sum of the parts is greater than the whole. And sometimes it is less. In the present case, it is exactly the same.

{¶ 2} Third-party defendant-appellant Monfort Supply Company appeals the trial court's grant of summary judgment. We affirm.

{¶ 3} This dispute centers on whether Monfort has the duty to defend and indemnify the third-party plaintiffs-appellees, Giovanni, Susanne, Leonardo, Eliza, Nicola, and Tracy Ranieri, in a dispute about a real-estate conveyance and a long-existing easement. The procedural complexity leading up to the current dispute belies the simplicity of the answer: when one party warrants that it will indemnify another "against all claims of all persons" and does not make any exceptions to that guarantee—well, we think the answer should be obvious.

## I. A Parcel, a Pipeline, and a Promise

{¶ 4} Nearly 50 years ago—all the way back in 1955—Monfort purchased a parcel of land from Norbert and Edna Frey, and the deed was properly recorded in Hamilton County. The Frey deed stated that the parcel was subject to an "easement for construction and maintenance of an oil pipeline to defendant Mid–Valley Pipeline Co., as recorded in Deed Book 2832, Page 38 of the Hamilton County Ohio Deed Records."

{¶ 5} The pipeline was indeed under the land (it ran from Texas to Lima, Ohio), but the easement was not recorded in Deed Book 2832. It was actually in Deed Book 2382. The easement called for a 50–foot area surrounding the pipeline to

remain free from any obstruction so that Mid–Valley could obtain access to and repair the pipeline if necessary.

{¶ 6} Monfort subdivided the land into smaller parcels suitable for single-family homes. In 1986, Monfort sold the lot involved in this case to the Ranieris. That deed warranted that the "title so conveyed is Clear, Free and Unincumbered [sic]; And further, That [Monfort] does Warrant and will Defend the same against all claims of all persons whomsoever." The deed also described an easement for septic purposes, but did not contain any description of the pipeline easement. It also referred to a plat book, which, in turn, referred to an easement for a pipeline "as recorded in D.B. 2832, PG 38." Again, the easement was actually in Deed Book 2382, not 2832.

{¶ 7} In 2001, plaintiffs Gerald and Deborah Kohlbrand purchased the same plot from the Ranieris. Their deed made no mention of the pipeline easement. Soon after their purchase, the Kohlbrands discovered the pipeline easement. They sued the Ranieris and eventually sued Mid–Valley, alleging that fraudulent nondisclosure of the pipeline easement had resulted in damages. In response, the Ranieris filed a third-party complaint against Monfort, claiming that Monfort was obligated to indemnify and defend the Ranieris because of the general warranty contained in the deed to them. The Ranieris moved for, and were granted, summary judgment on this limited issue. The trial court was correct.

## II. Legalism at Its Lowest

{¶ 8} Monfort now appeals, claiming in its sole assignment of error that summary judgment was inappropriate.

{¶ 9} We review summary-judgment determinations de novo, without deference to the trial court's ruling.[1] Summary judgment is appropriately granted when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party when viewing the evidence in the light most favorable to the nonmoving party.[2]

{¶ 10} The facts of this case are basically undisputed. While the issues of damages and attorneys' fees remain undecided, neither is before us in this appeal. All that concerns us is whether Monfort has a duty to defend and to indemnify the Ranieris in the underlying case. Monfort now argues that the deed referred

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

2. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

to the plat, which referred to the easement, which meant that the easement was incorporated by reference into the deed.  Not so.

{¶ 11} We decline to impose a rule that would require grantees to skip around the county recorder's office looking for any encumbrances that might exist on a prospective purchase where there is no mention of any encumbrance—and especially when there is a warranty *against* any encumbrance.  Deeds subject to an easement should disclose the easement on the face of the deed.  If Monfort had wanted to create an exception for the pipeline easement, it simply could have added "subject to" and referred to the easement in the general warranty section of the deed.  But it did not.

{¶ 12} And even if the plat reference had been incorporated by reference, the reference to the easement in the plat was wrong.

### III.  The Normans Strike Again

{¶ 13} Monfort contends, "Although a 'clear title' is one that is not subject to any restrictions, the case at bar involved a 'free and clear' title, which is the same as a marketable title."  So, according to Monfort, a free and clear title is worse than a clear title.  Say what?

{¶ 14} Would that Harold had not lost the Battle of Hastings.

{¶ 15} *Free* and *clear* mean the same thing.  Using both is an unnecessary lawyerism.  *Free* is English; *clear* is from the Old French *cler*.  After the Norman Conquest, English courts were held in French.  The Normans were originally Vikings, but after they conquered the region of Normandy, they became French; then they took over England.[3]  But most people in England, surprisingly enough, still spoke English.  So lawyers started using two words for one and forgot to stop for the last 900 years.

{¶ 16} So *free* and *clear* do not mean separate things; they mean, and were always meant to mean, *exactly the same thing*.  Just as *null* and *void* and *due* and *payable* mean the same thing.  All of these couplets are redundant and irritating lawyerisms.  And they invite just what has happened here—an assertion that they somehow have different meanings.

{¶ 17} The Norman Conquest was in 1066.  We can safely eliminate the couplets now.

{¶ 18} And this case involved a "clear, free and unincumbered" title.  Would Monfort argue that this, too, provides less protection than a clear title?  Black's Law Dictionary defines "clear" as "free from encumbrances and claims."[4]  And

---

3.  Teirsma, Legal Language (1999) 19.

4.  Black's Law Dictionary (8 Ed.2004) 268.

"incumbrance" means the same thing as "encumbrance," so we can deduce that "unincumbered" means the same thing as "unencumbered." So it is only logical that "clear, free and unencumbered" is a mere redundancy for clear or for "free from encumbrance."[5]

{¶ 19} An easement for an oil pipeline is certainly an encumbrance. And any title that is subject to an easement is not a clear title. Despite its warranty to the contrary, Monfort did not actually convey the land "free, clear and unencumbered," and it therefore had a duty to indemnify and defend the Ranieris. Not only was summary judgment appropriate, but any other result would have stretched the bounds of legalese to ridiculous proportions.

{¶ 20} If the answer's glaring simplicity were not enough, the Eighth Appellate District addressed a nearly identical case some 20 years ago in *Katana v. Harbin*.[6] There, an older deed had listed a sewer easement, but the newer deed did not. But the newer deed contained a general warranty that the land was free of encumbrances with exceptions for building, zoning, or other easements—but not for the sewer easement. The court held that the exception to the covenant in the newer deed " 'should not be extended beyond the plain and ordinary meaning of its terms.' * * * Therefore, what is written on the face of the deed must control."[7]

{¶ 21} We could not agree more. What is written on the face of the Monfort deed is that the conveyance was unencumbered and that Monfort would defend the Ranieris against any claims to the contrary. The conveyance wasn't, and Monfort didn't. There are no genuine issues of material fact; there are no issues of fact whatsoever. This was a simple case of legal interpretation that any first-year law student should be able to answer: a "free, clear and unencumbered title" is the same as a "clear title." Monfort warranted, in the plainest of language, that the land was unencumbered and that it would defend the Ranieris against any claims to the contrary. Summary judgment was therefore appropriate.

### IV. The Normans Conquer Lorain County

{¶ 22} Monfort cites *Zilka v. Cent. S. Ltd.*,[8] a Ninth Appellate District case that distinguished a clear title from a free and clear title in much the same way that

---

5.   See *Condorodis v. Kling* (1928), 33 Ohio App. 452, 169 N.E. 836.

6.   (Feb. 7, 1985), 8th Dist. No. 48543, 1985 WL 17565.

7.   Id., quoting *Stambaugh v. Smith* (1873), 23 Ohio St. 584, 1873 WL 13.

8.   (July 19, 2000), 9th Dist. No. 99CA007482, 2000 WL 988765.

Monfort now argues. "In short, while 'clear title' cannot have any encumbrance or restriction whatsoever, 'free and clear' title is a marketable title * * *." We are, thankfully, unable to find any case that has cited this aberration—the Norman invasion has not progressed any farther south in Ohio.

{¶ 23} We may consider *Zilka* and give it the weight that we consider appropriate.[9] And we consider it inappropriate to give *Zilka* any weight at all.

{¶ 24} The Normans and *Zilka* have also corrupted an Ohio real-estate treatise—namely, Baldwin's Ohio Real Estate Law. In the section defining "marketable title," the treatise states, "Title that is 'free and clear' is not the same as 'clear title.' Rather, 'free and clear title' means title that is unencumbered by any liens and is marketable."[10] It then cites *Zilka*.

{¶ 25} Before *Zilka,* we are sure that Baldwin's made no such claim. Another venerable Ohio treatise (published before *Zilka* ) states it properly: "['Clear title'] usually refers not to the title itself but to the absence of liens or encumbrances against the real estate. The term typically appears in the following context: The seller agrees to convey to the purchaser marketable title, 'free and clear' of liens and encumbrances."[11] So the sample used to define "clear title" used the term "free and clear" title. But Monfort argues that they are two different things. Is it any wonder that lawyers get a bad rap?

{¶ 26} Nine hundred years later, courts in Ohio are still dealing with the consequences of the Norman invasion. We can only hope that some day logic will prevail over silly tradition.

{¶ 27} Since the trial court got it right, we affirm the trial court's judgment.

Judgment affirmed.

DOAN, P.J., and SUNDERMANN, J., concur.

---

9.  See S.Ct.R.Rep.Op. 4(B).

10.  Baldwin's Ohio Real Estate Law (2003) 170.

11.  Ohio Real Property and Practice (5 Ed.1996) 172, citing *Frank v. Murphy* (1940), 64 Ohio App. 501, 18 O.O. 221, 29 N.E.2d 41.