OPINION *Page 2 
{¶ 1} Appellant, James Irons, appeals the December 2, 2005, judgment of the Tuscarawas County Court, Uhrichsville, Ohio, granting appellee, Richard Eberly's request for forcible entry and detainer, awarding appellee damages, and dismissing appellant's counterclaim for breach of contract and fraud.
 STATEMENT OF FACTS AND LAW {¶ 2} This matter began with the filing of a forcible entry and detainer action for damages to property and a request for compensation by appellee. In response appellant filed an answer setting forth a defense of waiver and a general denial. Appellant also filed a counterclaim for misrepresentation and fraud. The entire action involves a dispute over a one acre parcel of property (hereinafter, "the property"), which is the site of two mobile homes at 6945 Superior Road S.E., Uhrichsville, Ohio.
 {¶ 3} Appellee is the sole surviving party to a joint and survivorship deed whereby the property was transferred from Timothy and Rebecca Kamban to Richard Eberly and Joyce Jackson.[1] The joint and survivorship deed was executed on November 20, 2001 and recorded on January 2, 2002.
 {¶ 4} On November 20, 2001, appellee and Joyce Jackson granted Timothy and Rebecca Kamban a ninety-nine (99) year lease to a portion of the property. At the time of the lease agreement, the parties understood that one quarter (¼) of the property on which the Kamban's mobile home was located was the portion of the property subject to the lease agreement.[2] The lease agreement included a right of first refusal to purchase *Page 3 
the parcel of property on which the mobile home is located. However, the parties verbally agreed that if a bona fide purchaser became available, for the entire one acre parcel, the Kambans would discharge their lease for the price of five-thousand ($5,000.00) dollars. The lease was recorded on January 2, 2002.
 {¶ 5} In August of 2004, appellee met Rose Cunningham. Appellee and Ms. Cunningham lived at the mobile home on the property until November of 2004.
 {¶ 6} On November 3, 2004, appellant and appellee executed a "Lease with Purchase Option" for the entire one acre parcel of property. The lease agreement included a purchase option which stated that appellant had the option to purchase the property for the price of eighteen thousand ($18,000.00) dollars. The agreement required a two-thousand ($2,000.00) dollar down payment with monthly rent payment in the amount of two hundred and fifty ($250.00) dollars. The terms further stated that the purchase option had to be executed in writing with a closing date no later that March 3, 2010. Finally, the agreement stated that the purchase option would terminate if appellant was in default or breached and failed to timely cure any terms of the lease.
 {¶ 7} The lease with purchase agreement also included an "alterations and improvements" clause, a "damage to premises" clause, a "default" clause, a "hold-over" clause and a "condition of premises" clause. The alterations and improvements clause was set forth in paragraph eleven of the document. The clause required appellant to get prior written authorization from the appellee before making any alterations or improvements to the buildings or premises. The damages to premises clause required appellant to promptly repair any damage willfully caused to the property. *Page 4 
 {¶ 8} The default clause required appellee to provide appellant with written notice of any default or breach of the agreement terms. The clause also stated that a forfeiture of the lease would not result if appellant cured any default or breach within ten days of receiving the written notice. If appellant remained in default the clause stated that appellee could, "re-enter the premises and remove all persons therefrom".
 {¶ 9} The holdover clause provided the parties with an opportunity to enter into a month-to month lease upon the termination date of the lease in 2010. The condition of premises clause stipulated that appellant had examined the premises, including the grounds, and that he found them to be in "good order, and in safe, clean, and tenantable condition".
 {¶ 10} Upon execution of the lease agreement appellant gave appellee a two-thousand ($2,000.00) dollar deposit and began paying monthly rent in the amount of two hundred and fifty ($250.00) dollars.
 {¶ 11} In July of 2005, appellee and appellant got into a disagreement about appellant's renovations to the property. The renovations included removing the garage and porch from the mobile home without prior authorization. On July 5, 2005, appellee viewed the property and observed substantial destruction and damage to the mobile home and the septic system. Appellee subsequently sent written notice to appellant regarding his breach of paragraph 11, (the alterations and improvements clause), of the lease agreement. On July 25, 2005, appellant admittedly received the written notice. As of August 5, 2005, appellant had failed to make any repairs or otherwise cure the default and breach of the lease. *Page 5 
 {¶ 12} On July 26, 2005, appellant contacted the Tuscarawas County Health Department and registered a complaint about the properties septic system. After examining the property, on August 1, 2005, the health department issued a letter to both appellant and appellee, stating that the septic system violated several housing codes and ordered the parties to repair the system within thirty (30) days or otherwise the property would be ordered vacated.
 {¶ 13} On August 3, 2005, after receiving notice of the breach and a letter from the health department, appellant sent a letter to appellee expressing a desire to exercise his purchase option.
 {¶ 14} On August 20, 2005, appellee served appellant with an eviction notice pursuant to R.C. 1923.04. The notice stated that appellant had violated the alterations and improvement clause of the lease agreement. Specifically appellee stated that appellant had torn down the garage, ripped off the back porch and damaged the septic system. On August 24, 2005, appellant vacated the premises.
 {¶ 15} On August 31, 2005, appellee filed a complaint for forcible entry and detainer and request for damages. On September 14, 2005, the trial court found that appellant had vacated the property and scheduled the matter for further hearing.
 {¶ 16} On September 19, 2005, appellant filed an answer and counterclaim. In the answer appellant stated that appellee waived his right to claim a violation of the lease agreement since the removal and damage to the building "occurred many months ago" and appellee had failed to maintain a septic system as required by R.C. 5321.04(A)(4). In the counterclaim appellant argued that he was misled into entering the lease with the option to purchase because, upon execution of the agreement, appellee *Page 6 
misrepresented that he could transfer clear marketable title. Specifically, appellant claimed that appellee had failed to disclose the ninety-nine year lease held by Timothy and Rebecca Kamban. Appellant sought compensation in the amount of the Two-Thousand ($2,000.00) Dollar deposit and the aggregate amount of the accrued monthly installments of Two-Hundred and Fifty ($250.00) Dollars which had been made since November 2004.
 {¶ 17} On September 28, 2005, the trial court held a hearing on appellee's forcible detainer action and appellant's counterclaim for misrepresentation. Several witnesses testified including Timothy Kamban, Roger Fanning from the health department, James Powell (a repairman), David Eberle (a real estate broker), Rose Cunningham, appellee and appellant.
 {¶ 18} Rose Cunningham testified that her relationship with appellee began in August of 2004 and that she was living with appellee at the property in November of 2004. She stated that when they left the property it was "in good shape". She further testified that in July of 2005 (approximately eight months later), the property appeared to be "trashed". She stated that the garage and porch had been ripped off the mobile home. She observed extensive damage to the ceiling and doors and that outlets had been torn out of the walls leaving exposed wires.
 {¶ 19} Ms. Cunningham further testified that she overheard a conversation between appellant and appellee, which occurred at the time of the execution of the lease agreement. She stated that during that conversation appellee informed appellant about the ninety-nine year lease held by the Kambans. (Transcript of Proceedings at page 54, hereinafter T. at) *Page 7 
 {¶ 20} Timothy Kamban testified that he leased the front part of the property on which he has a mobile home. He admitted that the lease agreement stated that he had leased one acre of property, but that this was not the actual agreement he had reached with appellee. He stated that he would agree to sell the lease for Five Thousand ($5,000.00) Dollars.
 {¶ 21} Roger Fanning, the environmental health director of Tuscarawas County, inspected the sewer system on the property. Mr. Fanning testified that appellant's property had a surface sewage leakage and a makeshift septic tank. He further testified that the septic system did not meet water quality standards for discharge and that occupancy could not be approved unless the system was repaired within thirty days. Finally he testified that an approved sewage system could not be installed unless additional property was purchased. T. at 23.
 {¶ 22} James Powell, the manager of a maintenance and repair company, viewed the property for the purpose of giving appellee a repair estimate. Mr. Powell testified that the attached garage had been removed, the adjacent roof had been torn off, and that the roof was separating from the walls of the trailer. He testified that the concrete septic was not up to code. He further testified that the cost of repairs would exceed the value of the property. David Eberle, a real estate broker with no relationship to appellee, testified that the property was in poor condition and presently unsaleable. T. at 41.
 {¶ 23} Appellee testified that after viewing the property in July he sent appellant notice of the breach of the terms of the lease to purchase agreement by certified mail. Appellant received the notice on July 25, 2005. By August 5, 2005, appellant had failed *Page 8 
to make any repairs to the property. He further testified that a notice of eviction was given on August 20, 2005, requiring appellant to leave the premises by August 24, 2005. He admitted that the Kambans have a lease on the property but stated he had made appellant aware of the lease agreement. He further stated that he was not opposed to appellant purchasing the property and would honor appellant's lease to purchase if appellant paid the remaining balance of thirteen thousand seven hundred and fifty ($13,750.00) dollars. Finally, he testified that he was not aware until the county inspection that the septic system was not up to code and that the system was operational when he resided on the property. Finally, he stated that appellant was aware of the existing system when he moved onto the property and that appellant's actions of removing the attached porch irreparably damaged the existing system.
 {¶ 24} Appellant testified that his primary source of income is SSDI.[3] He admitted that when he sent written notice to exercise the purchase option he was not financially able to meet the terms of the agreement. He admitted that he did not get prior approval for his improvements but stated that his remodeling was due to carpenter ant damage and that it was his intention and belief that the repairs were an improvement. He testified that in December of 2004, (one month after executing the lease), he did become aware of the ninety-nine year lease, continued to pay the monthly rent, and remained committed to eventually exercising the purchase option. He further denied causing irreparable damage to the septic system.
 {¶ 25} After hearing all the evidence the trial court took the matter under advisement. On December 2, 2005, by judgment entry, the trial court granted appellee's complaint for forcible entry and detainer, granted appellee damages in the amount of *Page 9 
two-thousand and five hundred ($2,500.00) dollars and dismissed appellant's counterclaim. The trial court further ordered that appellant's down payment of Two-Thousand ($2,000.00) Dollars be applied against the damage judgment leaving a balance of Five Hundred ($500.00) Dollars owed. It is from this judgment that appellant now seeks to appeal setting forth the following assignments of error.
 {¶ 26} "I. THE TRIAL COURT COMMITTED ERROR IN FAILING TO DETERMINE WHETHER THE PROPER NOTICE HAD BEEN GIVEN THE DEFENDANT FOR EVICTION AND CANCELLATION OF THE WRITTEN AGREEMENT, LEASE/OPTION TO BUY.
 {¶ 27} "II. THE COURT COMMITTED AN ERROR OF LAW IN DISMISSING THE COUNTERCLAIM OF THE APPELLANT ALLEGING THAT APPELLEE INTENTIONALLY AND WILLFULLY REPRESENTED TO APPELLANT THAT PAYING THE AMOUNT OF $18,000.00 TITLE TO THE PREMISES IN QUESTION WOULD BE CONVEYED TO HIM FOR ONE ACRE TRACT IN THE NAME OF RICHARD EBERLY AND JOYCE L. JACKSON, DEED DATED NOVEMBER 20, 2001, AND RECORDED IN VOLUME 1043 AT PAGE 1260 OF THE OFFICIAL RECORDS OF TUSCARAWAS COUNTY, OHIO, EXHIBIT E ATTACHED TO APPELLANT'S COUNTERCLAIM.
 {¶ 28} "III. APPELLEE DID NOT GIVE APPELLANT THE REQUIRED THIRTY (30) DAY NOTICE TO VACATE THE PREMISES.
 {¶ 29} "IV. JUDGMENT OF THE TRIAL COURT IS CONTRARY TO LAW.
 {¶ 30} "V. THE TRIAL COURT COMMITTED ERROR IN THE LAW IN DISMISSING THE COUNTERCLAIM." *Page 10 
 I, III {¶ 31} In the first and third assignments of error, appellant argues that the trial court abused its discretion in granting appellee's complaint for forcible entry and detainer because appellant failed to show that notice of the action was given in accordance with law. We disagree.
 {¶ 32} In support, appellant makes three separate arguments. First, appellant argues that, pursuant to the lease to purchase agreement, appellee was required to give appellant ten day prior written notice to leave the premises. Second, appellant argues that appellee failed to show that a three day written notice had been given in accordance with R.C. 1923.04. Finally, appellant argues that because the agreement was a month-by-month tenancy appellee failed to provide appellant with thirty (30) day prior written notice of appellee's intent to terminate the lease.
 {¶ 33} In this case, the lease to purchase agreement had a default clause which required appellee to provide appellant with written notice of any default or breach of the agreement and provided appellant with a ten day period to correct or repair the problem prior to any forfeiture of the premises. The record establishes that appellee served appellant with written notice of the breach by certified mail. Appellant received the written notice on July 25, 2005. As of August 5, 2005, appellant had failed to fix the damages to the property. Therefore, appellee was in compliance with the agreement.
 {¶ 34} In Ohio, a lease must be in writing. R.C. 1335.04. When the lease is not in writing or is defectively executed[4], a month-to-month tenancy is created where there is a monthly rental payment. Delfino v. Paul Davies Chevrolet, Inc. (1965), *Page 11 2 Ohio St. 2d 282, 209 N.E.2d 194; Wineburgh v. Toledo Corporation (1932),125 Ohio St. 219, 181 N.E. 20. R.C. 5321.17 sets forth the terms by which a month to month lease may be terminated where no breach or default has occurred. However, R.C. 5321.17(D), specifically states in pertinent part that "[T]his section does not apply to a termination based on the breach of a condition of a rental agreement or the breach of a duty and obligation imposed by law. * * *"
 {¶ 35} In this case, the lease was not defectively executed. Furthermore, the agreement includes a separate "holdover" clause, which establishes the option of a month-to-month tenancy by agreement of the parties upon the termination of the current agreement on March 3, 2010. We find that the parties effectively entered into a lease agreement which will expire by its terms on March 3, 2010. The hold-over clause for a month-to-month tenancy was never invoked. Therefore, pursuant to R.C. 5321.17(D) the requirements set forth in R.C. 5321.17 do not apply in this case.
 {¶ 36} R.C. Chapter 1923 sets forth the requirements for a forcible entry and detainer action. Pursuant to R.C. 1923.04, "a party desiring to commence an action under this chapter, shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises at which the defendant is sought to be evicted." No action may be filed for forcible entry and detainer until expiration of the three day notice period. R.C. 1923.04(A). Proper service is a condition precedent to commencing an action for forcible entry and detainer. When such service is denied in the answer, the fact of such *Page 12 
service becomes as essential element of the movant's case. Sternberg v.Washington (1960), 113 Ohio App. 216, 177 N.E.2d 525.
 {¶ 37} In this case the "Notice to Leave the Premises" was served on August 20, 2005 by leaving a copy of the notice inside the appellant's screened in porch at his place of residence. The notice stated that appellee was requesting the appellant leave the premises on or before August 24, 2005. Furthermore, appellant stated in his answer and counterclaim and testified at the hearing that he had received the written notice to leave the premises. Thereafter, appellee filed a timely complaint for forcible entry and detainer on August 31, 2005.
 {¶ 38} For these reasons appellant's first and third assignments of error are not well taken and are hereby overruled.
 II {¶ 39} Appellant argues in the second assignment of error that the trial court erred as a matter of law in finding in favor of appellee and dismissing appellant's counterclaim. We disagree.
 {¶ 40} In the counterclaim, appellant set forth a cause of action for fraud. Essentially, appellant argues that prior to the execution of the agreement he was falsely led to believe that appellee had clear marketable title to the property. He further argued that he was unaware of the ninety-nine year lease agreement that encumbered the property. Therefore, he argues that, as a result, he executed the lease to purchase agreement to his detriment. Accordingly, appellant sought compensatory damages in the amount of the down payment and the aggregate amount of the monthly lease payments. *Page 13 
 {¶ 41} The Ohio Supreme Court has set forth the elements of fraud as follows: "A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101, paragraph four of the syllabus; Cohen v. Lamko,Inc. (1984), 10 Ohio St.3d 167, 169, 502, 462 N.E.2d 407, 409. The failure to prove one element of a cause of action for fraud is fatal to a party's claim. Carroll v. Stebelton (May 13, 1996), 5th Dist. No. 95CA0059, dismissed, appeal not allowed, (1996), 77 Ohio St.3d 1469, 673 N.E.2d 135.See also, Marasco v. Hopewell, Franklin App. No 03AP-1081, 2004-Ohio-6715, appeal not allowed, 105 Ohio St.3d 1544, 2005-Ohio-2188,827 N.E.2d 327.
 {¶ 42} "Clear title usually refers to the absence of liens or encumbrances against the real estate. The term typically appears in the following context: The seller agrees to convey to the purchaser marketable title, `free and clear' of liens and encumbrances."Kohlbrand v. Ranier (2005), 159 Ohio App. 3d 140, 823 N.E.2d 76 the "title need not be free of any possible claim of defect in order to be marketable, but it must be in a condition as would satisfy a buyer of ordinary prudence." G/GM Real Estate Corp. v. Susse Chalet Motor Lodgeof Ohio, Inc. (1991), 61 Ohio St.3d 375, 575 N.E.2d 141, paragraph two of the syllabus. However, "[i]t should appear reasonably certain that the title will not be called in question in the future, so as to subject the purchaser to the *Page 14 
hazard of litigation with reference thereto." McCarty v. Lingham (1924),111 Ohio St. 551, 558, 146 N.E. 64.
 {¶ 43} Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding intent not expressed in the clear language employed by the parties. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246, 374 N.E.2d 146
 {¶ 44} The written lease to purchase (the contract) executed by appellant on November 20, 2004, states as follows: "It is agreed that Lessee shall have the option to purchase real estate known as 6945 Superior Road S.E.-Uhrichsville Ohio-44683 for the purchase price of Eighteen thousand Dollars ($18,000.00) payable with a down payment of Two thousand Dollars ($2,000.00) payable upon exercise of said purchase option, and with a closing date no later than 3-3-2010 * * * This purchase option must be exercised in writing no later than 3-3-2010, but shall not be effective should the Lessee be in default under any terms of this lease or upon any termination of this lease.
 {¶ 45} The plain language of the purchase option states that appellant, upon invocation of the purchase clause, would receive title to the property. It does not say whether or not there was a ninety-nine year lease for a portion of that property that appellant would have to honor. The agreement simply gives appellant the option to purchase, when he is financially able, up to and including March 3, 2010, with the additional incentive of putting monthly rental payments toward the principal. Additionally, the current leaseholder testified that upon the exercise of the purchase clause by *Page 15 
appellant, it was his intention to release the lease for a portion of the property's sale price. Finally, the ninety-nine year lease does not prevent appellee from transferring title to the property subject to the lease agreement.
 {¶ 46} Additionally, there is no evidence to establish that appellee either intentionally or recklessly misled appellant into entering the lease agreement. There is evidence to the contrary. Rose Cunningham testified that she overheard appellant and appellee negotiating the terms of the lease agreement which included conversation about the ninety-nine year lease. Also, the ninety-nine year lease agreement was a matter of public record, duly recorded on January 20, 2002, and available for inspection by a buyer of ordinary prudence prior to November 20, 2004. Additionally, appellant admitted that he was familiar with the property and was aware that there was a separately owned mobile home on the front half of the property. Finally, appellant admitted that in December of 2004, he became aware that a separate lease agreement existed, did not seek to rescind the agreement, and continued to live on the premises until August of 2004.
 {¶ 47} Finally, any misunderstanding regarding the existence or non-existence of a separate ninety-nine year lease, never became either material to the transaction or ripe for review, because by his own actions, appellant breached the terms of the lease agreement. Furthermore, appellant's admitted lack of finances made him unable to exercise the option to purchase pursuant to the terms of the agreement.
 {¶ 48} In this case, the trial court's judgment entry does not state the specific findings of fact in support of the dismissal. However, the record also does not reflect a request for such findings. Therefore, upon review of the entire record, we find that the *Page 16 
record supports the trial court's decision to dismiss appellant's counterclaim for fraud for failure to prove all the elements of the cause of action. For these reasons we find that the trial court did not err as a matter of law, and we hereby overrule appellant's second assignment of error.
 IV, V {¶ 49} Appellant argues in his fourth and fifth assignments of error that the trial court erred as a matter of law in awarding appellee damages, and erred in dismissing appellant's cause of action in the counterclaim for breach of contract.
 {¶ 50} Appellant argues that the record established that appellee breached his statutory duty by violating R.C. 5321.04(A)(4). Specifically, appellant argues that appellee failed to maintain a septic system which was not up to code, and that appellee failed to maintain the mobile home in a habitable condition by failing to repair carpenter ant damage. Further, appellant argues that appellee waived any claim to damages by failing to quickly pursue a cause of action for forcible entry and detainer and/or by continuing to accept rental payments after the porch and garage were removed.[5]
 {¶ 51} R.C. 5321.04(A)(4) imposes an affirmative duty on a landlord. R.C. 5321.04(A)(4) states in pertinent part that a landlord shall "[M]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning fixtures and appliances * * *."
 {¶ 52} R.C. 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. However, in order to impose liability upon their landlord, a tenant has the burden of proving (1) that the landlord received notice of the defective condition of the rental *Page 17 
premises; (2) that the landlord knew of the defect; or, (3) that the tenant had made reasonable but unsuccessful attempts to notify the landlord. See Shroades v. Rental Homes (1981), 68 Ohio St.2d 20, 25-26,427 N.E.2d 774.
 {¶ 53} Where a landlord breaches a promise to make repairs to the leased premises and the tenant does not elect to make the repairs, the measure of damages is the difference between the rental value of the premises in their unrepaired condition and what the rental value would have been had the promised repairs been made. The stipulated rent amount is presumptive evidence of the rental value of the premises as repaired, but it is not conclusive. Smith v. Padgett (1987), 32 Ohio St.3d 344,513 N.E.2d 737. The measure of damages for either a breach of duty set forth in a lease or a statutory duty is the difference between the rent paid and the actual value received. Howard v. Simon (1984),18 Ohio App.3d 14, 480 N.E.2d 99.
 {¶ 54} In this case, the record reflects that on November 20, 2004, by stipulation appellant stated that the property was in "safe, clean and tenanable condition. Thereafter, appellant claimed that the removal of the porch and garage were due to carpenter ant damage. However, the record does not reflect that appellant either made appellee aware of the alleged condition, requested appellee to make the necessary repairs, or made a written request to personally make the necessary repairs.
 {¶ 55} Therefore, we conclude that the trial court did not err in dismissing appellant's counterclaim which alleged that appellee had breached the lease contract.
 {¶ 56} Furthermore, the testimony of real estate agent David Eberle established that the damage to the property substantially decreased the value of the property. *Page 18 
Therefore, the trial court could conclude that appellant's attempts to "renovate" the property caused a substantial decrease in the property's actual and rental value.
 {¶ 57} Furthermore, it is clear, pursuant to the Tuscarawas County Health Department representative that the septic system on the property at the time of the inspection was not up to code. The representative testified that the septic system could only be brought up to code with access to additional property. Notice of the septic system problems was given to both appellant and appellee on August 1, 2005. Appellant vacated the premises on August 24, 2005.
 {¶ 58} During the hearing, appellee testified that the septic system was operable in November of 2004, the system became inoperable due to appellant's "renovations" and that he did not become aware of the septic system's irreparable damage until August of 2005.
 {¶ 59} Therefore, we find that the evidence supported the damage award to appellee.
 {¶ 60} Additionally, in the same assignment of error, appellant argues that, "[A]ppellee waived any claim for damages for accepting payments after removal of the structures of which he complains."
 {¶ 61} In general, a landlord waives the right to terminate a tenancy due to a breach of the lease if, after learning of the breach, he takes action inconsistent with the termination of the tenancy. Brokamp v.Linneman (1923), 20 Ohio App. 199, 202, 153 N.E. 130 (Hamilton Cty.). This principle is not applicable only to situations involving nonpayment of rent; waiver may be deemed to have occurred in cases involving the *Page 19 
breach of a non-monetary obligation. Quinn v. Cardinal Foods, Inc.
(1984), 20 Ohio App.3d 194, 20 OBR 239, 485 N.E.2d 741 (Shelby Cty.).
 {¶ 62} In this case, appellee became fully aware of the damage to the property in July of 2005. Appellee then acted in compliance with the lease agreement by providing appellant with an opportunity to cure the breach. When appellant failed to cure the breach, appellee pursued a forcible entry and detainer action. We do not find that appellee acted inconsistently, which may have waived his right to terminate the tenancy and his right to be compensated for damages.
 {¶ 63} For these reasons, appellant's fourth and fifth assignments of error are not well taken and are hereby overruled.
 {¶ 64} The decision of the Tuscarawas County Court, Uhrichsville, Ohio is hereby affirmed.
By: Edwards, J. Hoffman, P.J. and Farmer, J. concur *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court, Uhrichsville, Ohio is affirmed. Costs assessed to appellant.
[1] Although Richard and Joyce have different last names the record indicates that the couple had been married for approximately twelve years. Ms. Jackson died on August 15, 2002.
[2] Due to clerical error, the lease agreement states that the entire one acre is subject to the ninety-nine year lease.
[3] Appellant testified that he receives Social Security Disability Income because he is legally blind.
[4] A defectively executed lease refers to the parties' failure to comply with mandatory technical requirements for a lease agreement.
[5] Appellant's fifth assignment of error. *Page 1