In re AUTOSTYLE PLASTICS, INC., Debtor.

CAR–TEC, INC., a Michigan corporation, Plaintiff,

v.

VENTURE INDUSTRIES, INC., a Michigan corporation, Defendant.

Bankruptcy No. SG 96–83767.
Adversary No. 98–88434.

United States Bankruptcy Court, W.D. Michigan.

Nov. 25, 1998.

Joel D. Applebaum, Pepper, Hamilton & Scheetz, Detroit, MI, for Debtor.

Elizabeth Chalmers, Grand Rapids, MI, Trustee.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JO ANN C. STEVENSON, Bankruptcy Judge.

This action comes before the court on a Motion for Summary Judgment filed by Venture Industries Corporation (Venture).

This case was removed from the Macomb County Circuit Court to the United States Bankruptcy Court for the Eastern District of Michigan under the provisions of 28 U.S.C. § 1452(a). On a Motion to Dismiss, Abstain or Remand, The Honorable Walter Shapiro ruled that the Bankruptcy Court had subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2). He further concluded that abstention was not appropriate. On July 27, 1998, The Honorable Paul V. Gadola of the United States District Court for the Eastern District of Michigan denied a Motion for Leave to Appeal. The case was then transferred on a Motion for Change of Venue to the United States Bankruptcy Court for the Western District of Michigan where the Debtor's base bankruptcy case was pending. Accordingly, we are authorized to enter final judgment subject to the appeal rights afforded by 28 U.S.C. § 158 and Fed.R.Bank.P. 8001 et seq.

### FACTS

On March 25, 1985, Car–Tec, Inc. (Car–Tec) and AutoStyle Plastics, Inc. formerly C & F Stamping Company (AutoStyle) entered into an agreement whereby Car–Tec would be the exclusive sales agent in the United States and Canada for vehicle component parts manufactured by AutoStyle. Among various other terms, the agreement provided that after termination of the contract, Auto-Style would continue to pay Car–Tec its full commissions for any product so long as it continued to be sold to any customer.[1]

The vehicle component sales programs procured by Car–Tec for AutoStyle were documented by blanket purchase orders giving AutoStyle the right to manufacture and sell the components for the entire model runs of General Motors' (GM) and other manufac-

turer's vehicles for which they were supplied. These were called "life of the part" contracts.

By early 1996, AutoStyle was having serious financial difficulties. On May 23, 1996, AutoStyle announced to its employees that it would be ceasing operations. AutoStyle's assets included accounts receivable owed by GM for parts that had already been produced. In fact, approximately 80–85% of AutoStyle's work was done for GM. If AutoStyle were to close, however, GM would be faced with a parts shortage that could have led to a plant shut down which in turn would have cost GM anywhere from a half a million to a million dollars per day. Because GM's practice was to offset any damages suffered from a parts shortage against the amounts owed the supplier, AutoStyle faced the possibility that it would never collect its receivables.

In mid-May, Venture, a designer, supplier and manufacturer of automotive components, contacted AutoStyle about leasing some of AutoStyle's equipment. Beginning on May 28, 1996, negotiations took place not only with regard to Venture leasing AutoStyle's equipment, but to it acquiring substantially all AutoStyle's operating assets.

These negotiations culminated on June 2, 1996, with the execution of an "Agreement of Venture Industries Corporation and Affiliates to Lease and Sublease the Operating Assets of AutoStyle" (the Lease Agreement). The Lease Agreement specifically stated that it was subject to bankruptcy court approval. In addition, page 19 provides: "On or before the court filing on 6/3/96 General Motors shall have made purchase arrangements for all existing AutoStyle—General Motors production with Venture at pricing satisfactory to Venture and General Motors."

According to Venture, after it and GM agreed on pricing satisfactory to both parties, GM canceled all existing purchase orders with AutoStyle, and placed new purchase orders with Venture on new terms for all the components previously produced by AutoStyle. Car–Tec argues that GM issued purchase orders to Venture for the production of the very same component parts previ-

---

1. There were several amendments to this agreement, none of which are relevant here.

ously supplied by AutoStyle and that Car-Tec, as AutoStyle's exclusive sales agent, had negotiated and put in place all of these "life of the part" purchase orders, working on them from the original quotes, through the prototype stage to full production orders.

On June 3, 1996, AutoStyle filed for bankruptcy under Chapter 11 [2] and immediately sought bankruptcy court approval of the Lease Agreement. On the same day, Car-Tec was given detailed notice of two hearings; one, "Authorizing Assumption of Executory Contract, Leases and Sub-Leases (With Option to Buy)" and the other, "Authorizing and Confirming Sale of Inventory Outside the Ordinary Course of Business Free and Clear of Liens and Other Interests." These hearings were to be held in the Bankruptcy Court for the Western District of Michigan on June 7, 1996 at 10 a.m.

On that day, the Lease Agreement was approved and the June 7 order signed. In the order, the Court found that Venture was a good faith purchaser and that it had purchased the operating assets of AutoStyle "free and clear of all liens, encumbrances, claims, security interests and obligations, except such restrictions and obligations as Venture has expressly agreed to under the terms of the [lease] agreement." The order further stated that "[s]uch liens, encumbrances, claims, security interests and obligations shall attach to the proceeds from the sale of the inventory in the same order of validity, rank and priority as said interest now exists ..."

Car-Tec argues that it is entitled to commissions for the sales and production programs which Venture took over and fulfilled because it was the procuring agent in the development of the programs and there was an implied assumption of the contract between Car-Tec and AutoStyle.

Although Car-Tec may have valid arguments regarding the "procuring agent doctrine" and an implied contract theory, there are several obstacles that must be overcome before these issues can be considered. Chief among them is notice.

## STANDARD FOR REVIEW

Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Bank.P. 7056. The summary judgment rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. The rule also requires the dispute be genuine. A dispute is genuine if a reasonable jury could return a judgment for the nonmoving party. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must draw all inferences in a light most favorable to the non-moving party (in this case Car-Tec), but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## DISCUSSION

■ On or around June 3, 1996, Car-Tec received notice of the hearing for bankruptcy approval of the Lease Agreement. This notice included a detailed explanation of the contents of the Lease Agreement as well as everything to be discussed and decided at the hearing. It is not known whether Car-Tec attended the hearing, but this is irrelevant. Car-Tec is charged with notice and consequently the duty of discovering what occurred at that hearing.

The bankruptcy court order clearly provided that Venture was acquiring assets free and clear of any claims. Car-Tec's future commissions for work it had completed satisfies the definition of "claim" as defined in 11

---

**2.** Shortly thereafter the case was converted to Chapter 7.

U.S.C. § 101(5)(A) as: "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

In *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr.N.D.Ohio 1987), the court held that a bankruptcy court sale free and clear of liens, claims and interests bars successor liability claims. Bankruptcy courts have the power to approve sales of assets free and clear of any interest that could be brought against the bankruptcy estate during bankruptcy, either through 11 U.S.C. § 363(f) or the bankruptcy court's equitable powers. However, a sale free and clear does not include future claims that do not arise until after the conclusion of the bankruptcy proceeding. *Ninth Avenue Remedial Group v. Allis–Chalmers Corp.*, 195 B.R. 716, 732 (N.D.Ind.1996).

Car–Tec's claims against Venture arise from Car–Tec's contract with AutoStyle. This contract was commenced prior to bankruptcy. All work performed by Car–Tec for AutoStyle had been completed by the time GM canceled its contract with AutoStyle and placed orders with Venture. Therefore, Car–Tec's right to payment is an interest in the property sold by AutoStyle to Venture. But for the sale, Car–Tec would have no claim against Venture. Thus, because its claim is based on an agreement entered into with AutoStyle, it is a pre-petition obligation that should have been brought forward during the bankruptcy. See *In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr.N.D.Ohio 1987) (claim arose before the debtor filed for bankruptcy and creditor could have filed a claim against the bankruptcy estate in the ongoing bankruptcy proceedings); *American Living Systems v. Bonapfel (In re All American of Ashburn, Inc.)*, 56 B.R. 186 (Bankr. N.D.Ga.1986) (creditor did not file a claim against debtor even though the claim ripened before bankruptcy and creditor knew that debtor had filed for bankruptcy); *Forde v. Kee–Lox Manufacturing Co., Inc.*, 437 F.Supp. 631 (W.D.N.Y.1977) ("The plaintiff's remedy in this case was to file a claim with the trustee in bankruptcy," when the cause of action accrued before the debtor filed for bankruptcy); *Paris Manufacturing Corp. v. Ace Hardware Corp. (In re Paris Industries Corp.)*, 132 B.R. 504 (D.Me.1991) (enjoining creditors from filing a suit against the asset purchaser when they can file a claim against the predecessor in the bankruptcy court). All of the creditors in these cited cases had filed or should have filed their claims against the asset seller, the predecessor, in the bankruptcy court. In fact, Car–Tec did file a proof of claim for commissions earned on work it had done for sales consummated by AutoStyle before the bankruptcy. Car–Tec could have filed a claim for work it performed but for which sales had not yet been consummated as of the date of bankruptcy. While perhaps difficult to ascertain, Section 101(5)(A)'s definition of "claim" includes amounts liquidated and unliquidated, fixed and contingent, matured and unmatured.

The Court finds unpersuasive Car–Tec's arguments regarding the implied assumption of the contract and the procuring cause doctrine. The theory behind the procuring cause doctrine is that a sales agent is entitled to recover commissions on sales for which he has been the procuring cause. Car–Tec claims to be the procuring cause behind the programs instituted by AutoStyle and GM because each of the programs was originated due to Car–Tec's efforts in the expectation of receiving commissions. The Court does not doubt that thousands of man-hours were expended in the initiation and implementation of these programs, but the fact remains that all work done by Car–Tec was completed prior to bankruptcy. When Car–Tec discovered that AutoStyle, Venture and GM were negotiating a deal to transfer these programs, whether through the notice of hearing, at the hearing, or during the negotiations, it should have taken steps to safeguard its position. At that time Car–Tec could have participated in the negotiations, objected to the sale, appealed the June 7, 1996 order or even filed suit against GM. Car–Tec failed to take any of these salutary steps. Instead it has filed suit against the purchaser, Venture after it is too late to do so and procedurally inappropriate.

As for the implied assumption of the contract theory, Venture's brief states that 11 U.S.C. § 365(d)(1) automatically rejects a contract that is not expressly assumed by the trustee within sixty days after the conversion of a bankruptcy case. However, this Code section applies only to executory contracts. An executory contract has been defined as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Jolly,* 574 F.2d 349 (6th Cir.1978). If the contract between Car–Tec and AutoStyle were executory, 11 U.S.C. § 365 would apply and the contract would be deemed rejected. Since Car–Tec acknowledges that it had fully performed its contractual obligations, all that remained when AutoStyle filed bankruptcy was its prepetition claim for damages. Accordingly, Car–Tec's position is not advanced by the implied assumption of contract theory.

This Court cannot permit Car–Tec to subvert the Bankruptcy Code's order of priorities simply because it is dissatisfied with its potential distribution in the bankruptcy case. The proper bankruptcy procedure would have been to object to the court's June 7, 1996 order or file an appeal therefrom. See Fed.R.Bankr.P. 8002. Car–Tec can not now collaterally attack that order when it failed to exercise any of its previous rights.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that a copy of this Opinion and Order be served by first-class United States mail, postage prepaid, upon James J. Vlasic, Esq., and Daniel P. Perk, Esq., with an information only copy to be served upon Jeff A. Moyer, Esq.