[Cite as *John M. Niehaus, Inc. v. TDGGC, L.L.C.*, 2025-Ohio-1722.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOHN M. NIEHAUS, INC., | : | APPEAL NO. C-240412 |
| | | TRIAL NO. A-2104163 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| TDGGC, LLC, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| HELKIN, LLC, | : | |
| Defendant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 5/14/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *John M. Niehaus, Inc. v. TDGGC, L.L.C.*, 2025-Ohio-1722.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOHN M. NIEHAUS, INC., | : | APPEAL NO. C-240412 |
| | | TRIAL NO. A-2104163 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | *O P I N I O N* |
| | : | |
| TDGGC, LLC, | : | |
| | : | |
| Defendant-Appellee, | : | |
| | : | |
| and | : | |
| | : | |
| HELKIN, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 14, 2025

*Robbins*, *Kelly*, *Patterson & Tucker*, *LPA*, *Charles E. Rust* and *Michael A. Galasso*, for Plaintiff-Appellant John M. Niehaus, Inc.,

*Dinsmore & Shohl LLP* and *Matthew J. Bakota*, for Defendant-Appellee TDGGC, LLC.

**MOORE, Judge.**

**{¶1}** Plaintiff-appellant John M. Niehaus, Inc., ("Niehaus") sued defendant-appellee TDGGC, LLC., ("TDGGC") for breach of contract, alleging that TDGGC breached the parties' 7Settlement Agreement and Mutual Release ("Settlement Agreement") by building more than 212 units on the Chestnut Park property (the "Property") without Niehaus's approval. The parties do not dispute that defendant Helkin, LLC., ("Helkin") which purchased the Property from TDGGC, actually built the excess units after its purchase.

**{¶2}** Niehaus filed a motion for summary judgment, arguing that TDGGC was liable under the plain language of the Settlement Agreement, and the sale to Helkin did not absolve it of its duty not to build more than 212 units without permission. TDGGC also moved for summary judgment, asserting that it cannot be found to be in breach of the settlement agreement because it is undisputed that it did not build the excess units. The trial court found that there were no genuine issues of material fact and that TDGGC did not breach the settlement agreement as a matter of law. Niehaus's motion was denied.

**{¶3}** On appeal, Niehaus argues the trial court erred in granting TDGGC's motion for summary judgment and denying its summary judgment motion against TDGGC and its motion for leave to file a third amended complaint. We disagree.

**{¶4}** For the reasons stated herein, we affirm the trial court's judgment.

## I.    *Factual and Procedural History*

**{¶5}** In 2000, Niehaus signed a purchase agreement ("Erpenbeck Agreement") whereby Niehaus agreed to sell the Property development to Erpenbeck Company ("Erpenbeck"). Recitals A and B of the Erpenbeck Agreement provided that if Erpenbeck built more than 200 units on the Property, Niehaus would be paid

$17,000 for each unit over 200. Pursuant to the Erpenbeck Agreement, Niehaus conveyed the Property to Erpenbeck's subsidiary, Chestnut Park Builders.

Towne Development Group purchases the Property and transfers interest to TDGGC.

**{¶6}** In May 2002, Chestnut Park Builders filed for bankruptcy. Towne Development Group, Ltd., ("TDG") entered into a sale and purchase agreement ("SPA") with Chestnut to purchase the Property through the bankruptcy proceedings. The bankruptcy court approved the sale in July 2002. The bankruptcy court's order stated, in pertinent part, that TDG purchased the Property:

> free and clear of all . . . security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, mechanics liens . . . and of all debts arising in anyway in connection with any acts, or failures to act, of the Debtor or the Debtor's predecessors or affiliates, claims, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters (sic) of any kind and nature, whether arising prior to or subsequent to the commencement of these cases and whether imposed by agreement, understanding, law, equity or otherwise, except for any such obligations specifically assumed by the Purchaser pursuant to the SPA.

That same month, TDG assigned its interest in the Property to its subsidiary, TDGGC.

**{¶7}** Pursuant to the SPA and the bankruptcy court order approving same, TDGGC completed construction of the swimming pool and clubhouse complex ("the Complex") on the Property. TDGGC demanded payment from Niehaus for the costs associated with the completion of the Complex.

**{¶8}** In 2003, TDGGC received approval from the Hamilton County Rural

4

Zoning Commission to build more than 208 units on the Property. Niehaus discovered that TDGGC sought this approval without its permission and demanded $17,000 for each additional unit that was built. Niehaus based its demand on the Erpenbeck Agreement from 2000, which TDGGC was not a party to.

TDGGC sues Niehaus and the parties enter into the Settlement Agreement.

{¶9} TDGGC filed a claim against Niehaus for payment for completing the Complex. Niehaus filed a counterclaim demanding $17,000 for each "proposed increase" in the number of units to be built on the Property.

{¶10} The parties ultimately signed the Settlement Agreement, which increased the permissible number of units to 212 and any units beyond this number required Niehaus's written consent. The Settlement Agreement contained a "Mutual Release of All Known and Unknown Claims" which was to be binding on the parties and "each of their successors, trustees, legal representatives and assigns."

{¶11} The Settlement Agreement also contained a confidentiality clause that restricted either party from sharing the terms of the agreement. To comply with the terms of the confidentiality clause and to give notice of the unit restriction to successors and assigns, the parties filed a letter with the Hamilton County Rural Zoning Commission.

{¶12} The letter explained that TDGGC agreed that it would not build more than 212 units without Niehaus's express written consent and that:

> The parties agree that this letter shall become part of the permanent record of the file for Phase 2, Aston Woods in connection with Zoning Case 98-4; Aston Woods. The parties further agree that the conditions and obligations contained in this letter and the agreement between the parties shall be binding upon the party's successors and assigns.

**{¶13}** Neither the Settlement Agreement nor the letter filed with the zoning commission specify whether, or how much, Niehaus would be compensated for any units built beyond the 212-unit cap in the Settlement Agreement. There is also no provision specifying that either party was responsible for giving notice to any subsequent purchaser.

**{¶14}** In 2019, TDGGC sold the Property to Helkin. At some point following the sale, Niehaus discovered Helkin built additional units on the Property. Specifically, Niehaus learned that the Property now had a total of 226 units, 14 units over the Settlement Agreement unit cap.

Niehaus files lawsuits after Helkin built more than 212 units.

**{¶15}** In December 2021, Niehaus filed a complaint against TDGGC for breach of contract. Niehaus filed an amended complaint the following day to correct an error stating the incorrect number of units that had been constructed.

**{¶16}** In January 2022, Niehaus sought leave to file its second amended complaint to add Helkin as a defendant. Niehaus alleged Helkin tortiously interfered with its contract with TDGGC. This second amended complaint is the subject of this appeal.

**{¶17}** In March 2023, Helkin filed an answer to Niehaus's second amended complaint and included a crossclaim against TDGGC for breach of the purchase contract for the sale of the Property.

**{¶18}** TDGGC filed a motion for summary judgment on both Niehaus's and Helkins's claims. As to Niehaus's claims, TDGGC argued it did not breach the settlement agreement because it did not build more than 212 units. TDGGC also argued that Helkin had constructive notice of the restriction against building more than 212 units on the Property because of the letter filed with the zoning commission.

6

**{¶19}** In December 2023, Niehaus filed a motion for leave to file a third amended complaint seeking to add several additional defendants and assert claims under the doctrine of piercing the corporate veil and R.C. Ch. 1336 (the Ohio Uniform Fraudulent Transfer Act), based on Niehaus's suspicions that TDGGC and its parent, TDG, were insolvent.

**{¶20}** In February 2024, the trial court granted TDGGC's unopposed motion for summary judgment against Helkin.[1]

**{¶21}** In March 2024, the trial court granted TDGGC's motion for summary judgment against Niehaus and denied Niehaus's motion for summary judgment against TDGGC. The court also denied Niehaus's motion for leave to file a third amended complaint.[2] In its entry, the trial court found (1) it was undisputed that TDGGC did not build more than 212 units, therefore it had not breached the Settlement Agreement; (2) the Settlement Agreement imposed no obligation on TDGGC to inform any other party of the restrictions; and (3) TDGGC was not bound by the recitals in the Erpenbeck Purchase Agreement because TDG purchased the Property free and clear of any previous obligation and TDGGC's interest was transferred to it under the same conditions.

**{¶22}** This appeal followed.

## II. Analysis

**{¶23}** We review a trial court's grant of summary judgment de novo. *Guthrie*

---

[1] Helkin's counsel withdrew, and Helkin failed to obtain new counsel to defend or further pursue any claims in this matter.

[2] While claims regarding Helkin are not before this court, Niehaus was granted summary judgment against Helkin. Niehaus asserted for the first time during oral argument that it continued to pursue TDGGC notwithstanding obtaining judgment against Helkin because both parties are jointly and severally liable for building the excess units. Because this argument was raised for the first time at oral argument, it is not properly before the court and will not be addressed. *See Effective Shareholder Solutions, Inc. v. Natl. City Bank*, 2009-Ohio-6200, ¶ 18 (1st Dist.).

7

*v. Guthrie*, 2024-Ohio-5581, ¶ 24 (1st Dist.). Summary judgment is appropriately granted when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence in the light most favorable to the nonmoving party, it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *Id.*; Civ.R. 56(C).

{¶24} Pursuant to Civ.R. 56, at the summary-judgment stage, the trial court may only consider the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC*, 2023-Ohio-2605, ¶ 6 (1st Dist.).

{¶25} The moving party has the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claim or defense. *Id.* at ¶ 7. If the moving party meets this initial burden, the nonmoving party then bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Id.*; Civ.R. 56(E). If the nonmoving party fails to do so, then summary judgment is appropriate and must be entered against the nonmoving party. *Environmental Solutions* at ¶ 6.

### A. *The trial court did not err by granting TDGGC's motion for summary judgment.*

{¶26} To prevail on a breach-of-contract claim, a plaintiff must establish (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. *Matthews v. Mark Heflin Ent.*, 2012-Ohio-2862, ¶ 22 (1st Dist.).

8

{¶27} The interpretation of a written contract is a question of law, which we review de novo. *Id*. at ¶ 25. In construing the terms of a written agreement, the primary objective is to give effect to the intent of the parties, which can be found in the language that they chose to employ. *Id*. Where a contract's terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. *Id*. A settlement agreement is a contract; a contract designed to terminate a claim by preventing or ending litigation. *Warmack v. Arnold*, 2011-Ohio-5463, ¶ 24 (1st Dist.). The party seeking to enforce a settlement agreement bears the burden of proving each element of their claim by a preponderance of the evidence. *Nationstar Mtge., L.L.C. v. Jessie*, 2025-Ohio-454, ¶ 27 (8th Dist.).

{¶28} Niehaus argues that it does not matter that TDGGC did not build the extra units because TDGGC was still obligated to perform under the Settlement Agreement. TDGGC does not refute that it was obligated to perform; instead, it argues that it did not breach the agreement.

{¶29} Here, the parties to the Settlement Agreement were Niehaus and TDGGC. Helkin, the entity that actually built the extra units, was not a party to the Settlement Agreement. Therefore, Niehaus failed to prove by a preponderance of the evidence that a party to the Settlement Agreement breached the contract because, as the trial court correctly found, TDGGC did not build the extra units.

{¶30} The confidentiality clause in the Settlement Agreement prevented TDGGC from discussing the Settlement Agreement. It did not require either party to inform any successor, assign, etc., of the restriction on the number of units that could be built on the Property. Meanwhile, the parties apparently intended to ensure that any successors and assigns had notice of the unit restriction by filing the letter with

the zoning commission.

<u>TDGGC was not obligated to inform Helkin of the restriction on the number of units to be built</u>.

**{¶31}** Niehaus asserts that it based its calculations for damages on the Erpenbeck Agreement, which required Erpenbeck to pay Niehaus $17,000 for each unit built over 200. It is undisputed that the parties to the Erpenbeck Agreement were Niehaus and Erpenbeck. Therefore, the trial court correctly found that TDGGC was not subject to those terms.

**{¶32}** Further, TDG's "Sale and Purchase Agreement" and the bankruptcy court order authorizing TDG's purchase of the Property through bankruptcy proceedings states that TDG purchased the Property free and clear of any prior contractual obligations and liabilities. Accordingly, TDG's conveyance to TDGGC was likewise free and clear. *See Kohlbrand v. Ranieri*, 2005-Ohio-295, ¶ 18 (1st Dist.), quoting *Black's Law Dictionary* (8 Ed. 2004) (*Black's Law Dictionary* defines "clear" as "free from encumbrances and claims."); *Car-Tec, Inc. v. Venture Industries (In Re Autostyle Plastics)*, 227 B.R. 797, 800 (Bankr.W.D.Mich 1998) (A bankruptcy court sale free and clear of liens, claims, and interests bars successor liability claims.).

**{¶33}** Niehaus failed to show that a genuine issue of material fact existed as to whether TDGGC breached the Settlement Agreement. Accordingly, the trial court did not err in granting TDGGC's motion for summary judgment and denying Niehaus's summary-judgment motion.

**{¶34}** Niehaus's first assignment of error is overruled.

**B.** ***The trial court did not abuse its discretion by denying Niehaus's third motion for leave to amend its complaint.***

**{¶35}** We review the trial court's ruling on a motion for leave to amend a complaint for an abuse of discretion. *Henderson v. Dewine,* 2022-Ohio-1025, ¶ 15 (1st

Dist.). A trial court abuses its discretion when its judgment is unreasonable, arbitrary or unconscionable. *Meehan v. Mardis*, 2022-Ohio-1379, ¶ 4 (1st Dist.). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id*. Further, a trial court abuses its discretion by denying a motion for leave to amend a complaint where a plaintiff may potentially state a claim upon which relief may be granted and provides no reason to justify a denial of the motion. *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 160 (1st Dist. 1999).

**{¶36}** Civ.R. 15(A) provides that the court shall freely grant leave when justice so requires. *Green v. Peters*, 2024-Ohio-6040, ¶ 14 (1st Dist.). When ruling on a motion to amend, the trial court should consider whether the movant made a prima facie showing of support for the claims it raises, the timeliness of the motion, and whether the proposed amendment would prejudice the opposing party. *Henderson* at ¶ 15. A trial court may liberally grant a Civ.R. 15(A) motion to amend, but it should be overruled if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Meehan* at ¶ 5. Additionally, a trial court properly denies a motion to amend the complaint when the amendment sought is futile. *Green* at ¶ 14.

**{¶37}** The trial court noted that Niehaus filed both a motion for summary judgment and a motion for leave to file a third amended complaint in its entry denying both. Although the court did not specify its reasons for denying Niehaus's motion for leave to amend, we can glean from the record that the motion was denied based on the trial court's conclusion that TDGGC did not breach the Settlement Agreement, which would make Niehaus's new claims futile.

**{¶38}** Niehaus's second assignment of error is overruled.

### III.    Conclusion

**{¶39}** For the foregoing reasons, we affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.